**Paul M. LUEDTKE, Appellant,**

v.

**NABORS ALASKA DRILLING, INC., Appellee.**

**No. S–3828.**

Supreme Court of Alaska.

May 29, 1992.

---

Charles W. Coe and Michael Smith, Anchorage, for appellant.

Mary Poteet, Winner & Associates, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Paul M. Luedtke was suspended and then terminated from his employment with Nabors Alaska Drilling, Inc. (Nabors) after testing positive for marijuana use in a urinalysis. This court upheld Nabors' *termination* of Luedtke in *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123 (Alaska 1989) (*Luedtke I*), but the case was remanded for a determination of whether Luedtke's *suspension* violated the covenant of good faith and fair dealing. On remand, the superior court found that Nabors did not violate the covenant of good faith and fair dealing when it suspended Luedtke. The court also imposed sanctions against Luedtke and his attorney pursuant to Alaska Civil Rules 11 and 95(a), and awarded attorney's fees pursuant to Alaska Civil Rule 82. Luedtke appeals the judgment in its entirety. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts leading up to Luedtke's suspension and termination are detailed in *Luedtke I*, 768 P.2d at 1125–26, and will not be repeated. Our instructions to the superior court on remand left one issue to be decided:

> The question whether Paul's *suspension* breached the covenant of good faith and fair dealing is for the trier of fact. On remand, the trial court should determine whether the covenant has been breached, taking additional evidence if necessary.

*Id.* at 1137 (citation omitted). We remanded the issue of Luedtke's suspension in part because it was based on different facts than the termination, and the superior court had not applied the covenant of good faith and fair dealing to those facts.

After a failed attempt at settlement, Nabors filed a motion in limine seeking an order limiting Luedtke's remedies on remand. The court entered an order which declared that Luedtke would not be entitled to reinstatement of employment or lost

wages after November 30, 1982, the date he was lawfully terminated. The court denied Luedtke's request for a four-day trial on the suspension and damages issue, and instead ordered the parties to brief the issues of whether Luedtke's suspension violated the covenant of good faith and fair dealing, and if so, what damages would result.

In his later Position Memorandum on Remand, Luedtke asked to present additional evidence that Nabors breached the covenant of good faith and fair dealing, and asked that the court consider the appropriate remedy. Luedtke continued to assert that he was entitled to reinstatement and back pay as a remedy for breach. Nabors asserted in response that Luedtke had not been suspended in bad faith, and simultaneously moved for costs and attorney fees pursuant to Civil Rules 11 and 95(a), asserting that Luedtke's arguments were frivolous because he presented no evidence of bad faith and because the remedies he sought had been precluded when its Motion in Limine was granted.

The superior court held a hearing on September 21, 1989. Luedtke again asked for an evidentiary hearing to prove damages, and also to show that he was treated differently from other employees. Nabors opposed introduction of any new evidence, and asserted that the only issues relevant to its good faith and fair dealing were the timing and notice of the test.

The superior court ruled in favor of Nabors on the good faith and fair dealing issue. The court also granted Nabors' motion for costs and attorney's fees under Civil Rules 11 and 95(a) in the amount of $8,578.11, but issued no findings to support that award. Nabors then moved for attorney's fees under Civil Rule 82(a)(1), which the superior court granted in the amount of $3,500.00.

## II. NABORS' SUSPENSION OF LUEDTKE VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Standard of Review.

 Whether Luedtke's suspension breached the covenant of good faith and fair dealing is a question for the trier of fact. *Luedtke I,* 768 P.2d at 1137. Normally we review such questions only for clear error. Alaska Civil R. 52(a). "However, we may review the application of a legal doctrine to undisputed facts without the usual deference to the superior court." *Foss Alaska Line, Inc. v. Northland Servs.,* 724 P.2d 523, 526 (Alaska 1986). While there are still disputed facts in this case, the record on remand now reflects several undisputed facts relevant to Luedtke's suspension: Luedtke had no notice that his urine would be tested for drugs; Luedtke's drug test was not performed contemporaneously with his work schedule; and, Luedtke was suspended after his urine tested positive for marijuana, but before he was given the option of a retest or any other options. Thus, we may review *de novo* the superior court's determination that these facts do not prove a violation of the covenant of good faith and fair dealing.

In finding that Luedtke's suspension did not violate the covenant, the superior court reasoned that "Nabors had no other alternative but to suspend Mr. Luedtke immediately." It stated that sending Luedtke to the work site would have compromised the safety of Nabors' employees and compromised Nabors in any litigation that resulted from an accident involving Luedtke. However, in reaching this conclusion, the superior court misapplied the covenant of good faith and fair dealing and misconstrued our instructions on remand.

### B. The Covenant of Good Faith and Fair Dealing.

 We have recognized a covenant of good faith and fair dealing in all at-will employment contracts. *Mitford v. de Lasala,* 666 P.2d 1000, 1007 (Alaska 1983). "This covenant does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement." *Jones v. Central Peninsula Gen. Hosp.,* 779 P.2d

783, 789 (Alaska 1989). The covenant is breached, for example, if an employee proves that the employer fired the employee "for the purpose of preventing him from sharing in future profits" to which the employee is entitled. *Mitford*, 666 P.2d at 1007. In *Hagans, Brown & Gibbs v. First National Bank of Anchorage*, 783 P.2d 1164 (Alaska 1989), we held that an attorney's client could be subject to liability for attorney's fees "if it can be shown that the [client's] decision to settle or not settle [the case] was made with the intent of taking advantage of the attorney." *Id.* at 1168. *Mitford, Jones* and *Hagans* establish that if it is proved that an employer's motive in firing an employee is to deprive the employee of the economic benefits of the contract, it is per se a bad faith termination. These decisions focus on the intent of the employer in evaluating whether bad faith exists, and uphold a finding of bad faith when the record supports a finding of an improper employer motive.

*Mitford, Jones* and *Hagans*, however, do not limit breach of the covenant of good faith and fair dealing to those circumstances. In *Jones*, we noted that the covenant of good faith and fair dealing "also requires that an employer treat like employees alike." *Jones*, 779 P.2d at 789 n. 6. *See also Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050, 1056 (Alaska 1986). We have held that proof that an employee was fired for an unconstitutional reason "amounts to unfair dealing as a matter of law." *State v. Haley*, 687 P.2d 305, 318 (Alaska 1984). In *Luedtke I*, 768 P.2d at 1130, we also stated that proof that a private employer's violation of a public policy could constitute a breach of the covenant of good faith and fair dealing.

These cases, rather than focusing on the intent of the employer, indicate that the covenant of good faith and fair dealing also requires the parties to act in a manner which a reasonable person would regard as fair. Indeed, in *ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1156 (Alaska 1988), this court upheld a jury instruction in which the judge stressed that an employer's discretion must be "exercised *reasonably and* in good faith" and that the employer's decisions must be made "*fairly and* in good faith." (Emphasis added.) In *Klondike Indus. Corp. v. Gibson*, 741 P.2d 1161, 1168 (Alaska 1987), we cited with approval excerpts from the Restatement of Contracts:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

Restatement (Second) of Contracts § 205 comment d (1981).

■ Thus, our cases establish that the covenant of good faith and fair dealing includes multiple expectations about the behavior of the parties to a contract.

■ The Uniform Commercial Code's requirement of good faith and fair dealing in the case of merchants, contained in section 2–103, requires more than just absence of evil motive. " 'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." U.C.C. § 2–103(1)(b).[1] Courts and commentators which have addressed the issue say that this imposes an objective as well as a subjective standard.[2]

## C. Our Instructions on Remand.

In *Luedtke I*, we considered the issue of whether Nabors' decision to fire Paul Luedtke (and his brother Clarence) violated the covenant of good faith and fair dealing

---

**1.** Alaska has adopted this provision of the U.C.C., found at AS 45.02.103(a)(2).

**2.** *See In re Martin Specialty Vehicles*, 87 B.R. 752, 765–66 (Bankr.D.Mass.1988), *rev'd on other grounds*, 97 B.R. 721, 729 (D.Mass.1989); *Ledbetter v. Darwin Dobbs Co.*, 473 So.2d 197, 201 (Ala.Civ.App.1985); W. Hawkland, *Uniform Commercial Code Series* § 2–103:02 (1984 & Supp.1991); J. White & R. Summers, *Uniform Commercial Code* § 6–3, at 286–87 (3d ed. 1988). *Contra, Richard Short Oil Co. v. Texaco*, 799 F.2d 415, 422 (8th Cir.1986) (requiring "prohibited motive" for breach under Arkansas law).

based on the claim that Nabors' drug tests intruded upon their privacy:

> We conclude that there is a public policy supporting the protection of employee privacy. Violation of that policy by an employer may rise to the level of a breach of the implied covenant of good faith and fair dealing. However, the competing public concern for employee safety present in the case at bar leads us to hold that Nabors' actions did not breach the implied covenant.

*Luedtke I*, 768 P.2d at 1130. We noted, however, that there are limits on the employer's right to invade the privacy of an employee, even if the employer has a legitimate concern for the health and safety of other workers. We held that a "drug test must be conducted at a time reasonably contemporaneous with the employee's work time" and that "an employee must receive notice of the adoption of a drug testing program." *Id.* at 1136–37.

In the case of Luedtke's *termination*, these considerations did not apply. Luedtke was fired after refusing to take a drug test for which he had ample notice and which would have been reasonably contemporaneous with his work schedule. However, in remanding the case for consideration of whether Luedtke's *suspension* violated the covenant of good faith and fair dealing, we suggested that the factors of timing and notice should have been taken into account by the superior court.

On remand, the superior court did not take those factors into account. Indeed, the superior court acknowledged that its analysis of Luedtke's suspension was little different from our analysis of Luedtke's termination:

> The supreme court has held that the termination for refusal to take the drug tests did not violate the implied covenant of good faith dealing [sic] in this case because of the competing public concern for employee safety.... Whether suspension of Mr. Luedtke because of the discovery of cannabinoids in his blood is a violation of the covenant is a closely related, but not precisely the same, question.

*Luedtke v. Nabors Alaska Drilling, Inc.*, No. 3AN–83–9147 Civ., slip op. at 2 (Alaska Super. Nov. 7, 1989). The court went on to conclude that suspending Luedtke was not a violation of the covenant of good faith and fair dealing because Nabors had a legitimate concern for the safety of its employees. While the court stated that the question of the suspension was "not precisely the same" as the question of the termination, in fact it treated the questions as identical. This did not comport with our instructions. Had we concluded that the questions were identical, we could have resolved the issue of the suspension when the case was first before us. Instead, we must resolve that issue now.

### D. Luedtke's Suspension.

■ Nabors argues that Luedtke's suspension did not violate the covenant of good faith and fair dealing because breach of the covenant requires subjective bad faith on the part of the employer, and there is no evidence of subjective bad faith in the record with respect to the timing of or lack of notice prior to Luedtke's drug test. For this proposition, Nabors relies on the California Supreme Court's discussion of the covenant of good faith and fair dealing in *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). The issue decided by the sharply divided California court in *Foley*, however, was whether a breach of the covenant could give rise to tort damages, an issue previously decided in Alaska. *See Akers*, 753 P.2d at 1153–54. The *Foley* court was only peripherally concerned with the issue of what constitutes a breach of the covenant, which is the issue in this case, and for which there is Alaska precedent. Furthermore, to the extent *Foley* does discuss that issue, it recognizes that subjective bad faith is not always required. *Foley*, 765 P.2d at 400. Thus, Nabors' reliance on *Foley* is misplaced.

We agree that there is no evidence of subjective bad faith on Nabors' part, but as we have already stated, the covenant of good faith and fair dealing also requires that the employer be objectively fair. The superior court found that Luedtke was

tested for drug use without prior notice, that no other employee was similarly tested, and that Nabors suspended Luedtke immediately upon learning of the results of the test. Nabors does not dispute these findings. We hold that as a matter of law, these facts constitute a violation of the covenant of good faith and fair dealing.

As we stated in *Luedtke I:*

> [a]n employee must receive notice of the adoption of a drug testing program. By requiring a test, an employer introduces an additional term of employment. An employee should have notice of the additional term so that he may contest it, refuse to accept it and quit, seek to negotiate its conditions, or prepare for the test so that he will not fail it and thereby suffer sanctions.

768 P.2d at 1137 (footnote omitted). There is evidence in the record that Luedtke might have followed at least one, if not more, of these alternative paths had he received notice of the new drug testing program. Nabors insists that Luedtke would have refused to take the test and quit. However, Luedtke presented evidence on remand to show that he has more recently taken several drug tests with negative results. Presumably, those were tests for which he had notice, and for which he prepared. Nabors' failure to give notice of the test was objectively unfair to Luedtke.[3]

The superior court found that Luedtke did not have notice prior to being tested, and Nabors does not dispute this. Luedtke and Nabors agree that this testing was the cause of Luedtke's suspension. The superior court should have concluded, therefore, that in suspending Luedtke, Nabors breached the covenant of good faith and fair dealing.

**E. Damages.**

 Breach of the covenant of good faith and fair dealing results in contract damages. *Akers*, 753 P.2d at 1154. "The goal of contract damages is to place the nonbreaching party in as good a position as if the contract had been fully performed." *Alyeska Pipeline Serv. Co. v. H.C. Price Co.*, 694 P.2d 782, 787 (Alaska 1985). In the case of wrongful discharge, this generally means that the employee "is entitled to the total amount of the agreed upon salary for the unexpired term of his employment, less what he could earn by making diligent efforts to obtain similar employment." *Skagway City School Bd. v. Davis*, 543 P.2d 218, 225 (Alaska 1975), *overruled on other grounds, Diedrich v. City of Ketchikan*, 805 P.2d 362, 366 (Alaska 1991). Where the employee is wrongfully suspended rather than discharged, the employee is still under contract to the employer and need not mitigate damages by seeking other employment. Thus, Luedtke may be entitled to back pay.

 However, Luedtke was fired justifiably by Nabors for failing to take a drug test on November 30, 1982. *Luedtke I*, 768 P.2d at 1137. Any damages he may have suffered after that date were a result of his lawful termination and were caused by his own refusal to comply with reasonable company policy. Luedtke argues that he should be entitled to reinstatement as a remedy for the suspension apart from any remedies for his termination. This position, if adopted, would make it impossible for an employer to cure a wrongful act. Here Nabors impermissibly suspended Luedtke, but then attempted to cure the problem by offering Luedtke a legitimate retest. Nabors was, in a sense, mitigating

---

3. Because we conclude that Nabors violated the covenant, we need not address Luedtke's further argument that the superior court erred in not considering whether Luedtke was treated differently than other employees in similar circumstances. We do note, however, that the superior court should have addressed this argument. There was evidence that Luedtke was not given the same options after his drug test came up positive as were other employees. Luedtke wished to present additional evidence on this issue on remand. Nabors claims that the superior court did not err in refusing to take additional evidence on differential treatment because that would not be relevant to whether it acted fairly and in good faith. Nabors' position is inconsistent with our earlier cases on good faith and fair dealing. *See Jones*, 779 P.2d at 789 n. 6; *Rutledge*, 727 P.2d at 1056.

its own damages. We decline to hold that an employer may never mitigate damages.

Luedtke may not recover for damages not caused by Nabors' breach of the covenant of good faith and fair dealing. Further, his damages may not exceed wages lost between November 5, 1982, the date of his suspension, and November 30, 1982, the date of his lawful termination, as well as any incidental damages he can prove. Because the superior court made no findings as to cause or damages, we must remand the case for a determination of these two issues.

## III. THE TRIAL COURT ERRED IN IMPOSING SANCTIONS ON LUEDTKE

■ The superior court awarded Nabors costs and attorney's fees in the amount of $8,578.11. Since the court did not specify under which rule it made this award, we will treat the award as falling under Alaska Civil Rule 11.[4] This court normally reviews the award of sanctions under Rule 11 for abuse of discretion. *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989). Here, however, the superior court's sanctions order was improperly entered without factual findings and without a hearing. "[W]here sanctions are to be imposed, courts should, as a matter of sound practice, make a clear record concerning the reason for imposing the particular sanction and the authority relied upon to do so. Failure to do so may require a reversal and remand for entry of such findings." *Esch v. Superior Court*, 577 P.2d 1039, 1043 (Alaska 1978). Luedtke should have been given the opportunity to contest the sanc-

tion award at a hearing, and the superior court should have indicated its reasons for imposing the sanction, especially since the amount of the award was significant.[5] Thus, our normal procedure would be to remand the award of sanctions to the superior court for entry of findings.

■ We decline to remand in this case, however, because we find no evidence in the record which could possibly support an entry of sanctions under Rule 11. At the time the superior court ordered the sanctions against Luedtke, Alaska Civil Rule 11 was identical to Federal Rule of Civil Procedure 11. It provided in relevant part:

> Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

---

4. Nabors also requested an award of costs and attorney's fees under Alaska Civil Rule 95(a). We have never had occasion to review this rule. However, an award under Rule 95(a) must be based on a violation of another civil rule. In this case, Nabors alleges only that Luedtke violated Rule 11. Thus, regardless of whether the award is considered to be sanctions for a direct violation of Rule 11, or costs and attorney's fees under Rule 95(a) as a result of a violation of Rule 11, this court must review whether a Rule 11 violation occurred.

5. Nabors argues that a hearing was held on the sanctions in this case, presumably referring to

the superior court's hearing on the merits of Luedtke's claim. To the extent that the issue of sanctions was mentioned at all at that hearing, it was raised only briefly by Nabors' counsel. There is no indication in the record of the trial judge having considered the issue, or of Luedtke being given the opportunity to address it. The record indicates that the only notice given Luedtke that the issue of sanctions might be considered at that hearing was mailed by Nabors' counsel three days before the hearing itself, making it untimely. *See* Alaska R.Civ.P. 77(d).

**1228**

reasonable expenses incurred because of the filing of the pleadings, motions, or other paper, including a reasonable attorney's fee.[6]

Rule 11 "creates an objective standard of 'reasonableness under the circumstances,' and is intended to be more stringent than a mere 'good faith' formula." *Keen,* 784 P.2d at 658 (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir.1986). It is not necessary to show willful misconduct or subjective bad faith in order to impose sanctions. Rather, one must inquire whether there was a reasonable basis for the attorney's signature at the time the paper was submitted. *Alaska Fed. Sav. & Loan v. Bernhardt,* 794 P.2d 579, 583 (Alaska 1990).

The sanction awarded was the full amount requested by Nabors to compensate Nabors for filing three documents: an opposition to Luedtke's request for trial, a motion in limine regarding remedies, and a position memorandum on remand. Nabors claimed that these filings were only necessary because Luedtke adhered to several frivolous arguments on remand. The arguments complained of included Luedtke's claim that he was entitled to reinstatement and back pay as a remedy for his suspension, and Luedtke's claim that Nabors' discriminatory treatment of him constituted a violation of the covenant of good faith and fair dealing. Nabors asserts that these arguments were precluded by our prior decision in this case, as well as by orders of the superior court. Nabors also argues that Luedtke's pursuit of this case on remand was not for any legitimate purpose because he rejected a settlement offer worth far more than his claim simply to harass Nabors. Nabors asserts that Luedtke purposely delayed the litigation so that he could refile bankruptcy in case he lost.

We disagree. First, there is no evidence to support the allegation that Luedtke purposely delayed the litigation so that he could avoid liability by filing bankruptcy.

The briefing schedule on all issues was established by the superior court, and Luedtke's requests for extensions are supported by uncontroverted affidavits and resulted in a total delay of only a few weeks. Second, nothing in our prior decision in this case could be read to preclude Luedtke from arguing that his suspension violated the covenant of good faith and fair dealing because he was treated differently than other employees. On the contrary, consideration of such an argument was the express purpose of our remand. Finally, Luedtke should not be sanctioned for seeking reinstatement and back pay as remedies for his suspension. *Luedtke I* never discussed damages for improper suspension. Luedtke had a reasonable basis for seeking these remedies because there is no Alaska case law defining the limits of damages for suspension from employment.

Nabors further argues that the purpose of its motion in limine was to refine the issues on remand, so that after the superior court ordered that back pay after November 30, 1982, and reinstatement were not possible remedies, Luedtke should have ceased to argue for them. We agree that Luedtke might have followed a different course of action, such as to petition for review of the superior court's order, wait until final judgment to challenge it on appeal, or waive the issue. We do not, however, find his behavior sanctionable. The record reflects that Luedtke's attorney was engaging in zealous advocacy on behalf of his client, not frivolity, in continuing to press the issue of remedies. And to the extent that Nabors argues that any argument contrary to the court's order limiting remedies would be frivolous, it is incorrect. The trial court always has the power to "revise or reverse interlocutory rulings deemed erroneous." *C.J.M. Constr. v. Chandler Plumbing & Heating,* 708 P.2d 60, 61 n. 1 (Alaska 1985). The doctrine of "law of the case" is a matter of judicial policy, not law, and "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit

---

**6.** Rule 11 has since been amended to delete the last sentence, which had mandated sanctions for a violation of the rule.

to their power." *Stepanov v. Gavrilovich,* 594 P.2d 30, 36 (Alaska 1979) (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (opinion of Holmes, J.)). Thus, the award of sanctions is reversed.

## IV. ATTORNEY'S FEES ON REMAND

The superior court awarded Nabors $3,500 in attorney's fees under Alaska Civil Rule 82. Rule 82(a) allows for recovery of attorney's fees by a "prevailing party." There is no assertion by Nabors that this request for fees covers anything but its work on remand of this case. Since we conclude that Nabors did violate the covenant of good faith and fair dealing in suspending Luedtke, Nabors cannot be considered the prevailing party on remand. Thus, the award of $3,500 in attorney's fees under Rule 82 is vacated.

## V. CONCLUSION

The judgment of the superior court is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.