*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CALVIN GRIMMETT, | ) | |
| | ) | Supreme Court Nos. S-13944/14093/14083 |
| Appellant and | ) | (Consolidated) |
| Cross-Appellee, | ) | |
| | ) | Superior Court No. 3AN-09-08970 CI |
| v. | ) | |
| | ) | O P I N I O N |
| UNIVERSITY OF ALASKA, | ) | |
| | ) | No. 6791 – June 28, 2013 |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |
| | ) | |
| UNIVERSITY OF ALASKA, | ) | Superior Court No. 4FA-08-02579 CI |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YAUNA TAYLOR, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal in File Nos. S-13944/14093 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jack Smith, Judge.

Appeal in File No. S-14083 from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Kevin T. Fitzgerald, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant/Cross-Appellee Grimmett. William B. Schendel, Schendel Law Office, Fairbanks, and Susan Orlansky, Feldman Orlansky & Sanders, Anchorage, for Appellee/Cross-Appellant/Appellant University of Alaska. No appearance by Yauna Taylor, Respondent.

Before: Carpeneti, Chief Justice, Fabe and Stowers, Justices. [Winfree, Justice, not participating.]

STOWERS, Justice.

## I. INTRODUCTION

Yauna Taylor and Calvin Grimmett were employed by the University of Alaska. The University terminated their employment through notices of nonretention. The University also and alternatively terminated Grimmett for cause.

Superior Court Judge Michael A. MacDonald found that the University violated Taylor's due process rights when the University nonretained her without a hearing rather than terminating her for cause; the court ordered additional briefing on the issue of Taylor's backpay. Superior Court Judge Jack Smith upheld Grimmett's nonretention, finding that the University's nonretention policy did not violate Grimmett's due process rights. However, Judge Smith set aside Grimmett's for-cause termination, finding that the University had violated the objective prong of the implied covenant of good faith and fair dealing.

The University petitioned for review in Taylor's case, which we granted. Grimmett appealed and the University cross-appealed. We consolidated these cases for oral argument and decision because both involved the University's use of its nonretention procedure. We conclude that the University violated Taylor's due process rights when it used its nonretention procedure to terminate her employment without a

hearing. We therefore affirm Judge MacDonald's decision and remand for further proceedings concerning the scope of Taylor's backpay remedy. In Grimmett's case, as in Taylor's, the University used its nonretention procedure to terminate the employment of a for-cause employee without a hearing, in violation of the employee's due process rights. We therefore reverse Judge Smith's decision upholding Grimmett's nonretention. However, we also reverse Judge Smith's decision setting aside Grimmett's for-cause termination and hold that the University did not violate the implied covenant of good faith and fair dealing when it terminated Grimmett's employment for cause. We remand for further proceedings to determine if Grimmett is entitled to additional pay in light of our decision.

## II. FACTS AND PROCEEDINGS

### A. Taylor Facts And Proceedings

Taylor worked as an "Administrative Generalist" for the University of Alaska Fairbanks from May 1, 2005 to May 1, 2008. The University provided Taylor with periodic employment letters detailing the terms of her employment.[1] Those letters explained "[t]his appointment is for 'regular,' 'continuing' employment with benefits," and then provided "General Conditions of Employment," which stated in part:

> New employees of the University are employed in an at-will probationary status for the first six months of employment. Promoted employees also serve a probationary period with limited rights of retreat. During the probationary period your employment may be terminated for no reason or any reason. Pursuant to University Regulation [04.07.100], the University also may elect to discontinue employment through non-retention with notice or pay in lieu of notice.

---

[1] Taylor's last employment letter was dated June 27, 2007 and provided that the term of employment was August 5, 2007 through June 7, 2008, a ten-month appointment period.

The letters also stated that Taylor's "appointment and other terms of employment are governed, in order of priority, by Board of Regents Policy, University Regulations, and applicable campus rules and procedures." Regents Policy 04.01.055(A) states that "At-will employment is an employment relationship that either the employee or the university may terminate at any time for any reason or no reason."[2] Further, "[e]mployment not established as at-will entitles the employee to such notice and appeal processes as specified by regents' policy and university regulation."[3] University Regulation 04.01.050 distinguishes between "At-Will Employment" and "For Cause Employment." The regulation explains that the University "designates employment not established as at-will to be for cause."[4] The University concedes that Taylor's employment was for-cause employment.

In a letter dated April 3, 2008, the University informed Taylor of its "decision to exercise its right of nonretention," citing University Regulation 04.07.100.[5]

---

[2] UNIV. OF ALASKA, REGENTS' POLICY & UNIVERSITY REGULATION P04.01.55(A), *available at* http://www.alaska.edu/bor/policy-regulations/ (last visited Mar. 27, 2013).

[3] REGENTS' POLICY P04.01.55(C).

[4] UNIVERSITY REGULATION R04.01.050(B).

[5] University Regulation 04.07.100 reads, in part:

> If the University elects to discontinue employment through nonretention under Regents' Policy 04.07.100, written notice shall be given as required by this section. Provisions of this section do not apply to termination of employment pursuant to other provisions of Regents' Policy or University Regulation, nor do they apply to employees covered by collective bargaining agreements. At the election of the University, the employee may be given pay in lieu of notice.

Taylor was placed on paid leave for four weeks, and on May 1, 2008 her employment with the University officially ended.

> Nonretention is described in Regents' Policy 04.07.100:

> The university may discontinue or not renew an existing employment relationship through nonretention. Nonretention does not reflect discredit on an employee. If notice of nonretention is required by university regulation, the notice will be in writing and will comply with university regulation adopted under this section. The university may not use nonretention to terminate tenured faculty.[6]

In a form provided to employees who receive notice of nonretention, the University explained that "[w]ithout a request" the University "will not voluntarily disclose to [third] parties any performance or conduct related reasons for a nonretention or at-will termination, although the University will consider any such reasons with respect to future employment with the University."

In response to her nonretention, Taylor filed a grievance with the University arguing that because she was a for-cause employee, she was entitled to receive termination-for-cause proceedings. During the discovery process for this grievance proceeding Taylor learned the University had concerns about her performance.

The University appointed attorney William Cotton as a hearing officer and argued that the University was permitted by its employment agreement, policies, and regulations to nonretain Taylor. Cotton concluded that "the University [was] correct that the Policies and Regulations allow[ed] the non-retention of non-tenured employees without a showing of cause." Cotton then cancelled a previously scheduled evidentiary hearing and recommended that the "Chancellor uphold the University's decision to non-retain Ms. Taylor." Chancellor Brian Rogers adopted Cotton's recommendation. Taylor

---

[6]     REGENTS' POLICY P04.07.100.

then appealed to University President Mark Hamilton, who affirmed the denial of Taylor's grievance.

Taylor filed an administrative appeal in the superior court in Fairbanks. The superior court ruled in Taylor's favor. The court first noted that "[a]ppellate courts review an agency's interpretation of its own regulations under the reasonable and not arbitrary standard. This deferential standard of review properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue."[7] Even given this deferential standard of review, the superior court found the University's decision that employees like Taylor "are subject to nonretention at will" to be "an unreasonable interpretation of the [University's] regulations" because it "renders 'for cause' employment rights meaningless." The superior court explained:

> In short, performance or conduct related reasons for nonretention can be a discredit towards future University employment. The University is in fact using nonretention where discredit attaches. This suggests that nonretention is being misapplied. The policy contemplates nonretention being used only when it would not reflect discredit on an employee. Thus it cannot be applied in circumstances where discredit attaches.

Additionally, the superior court found that Taylor, as a "for cause" employee, "had an interest in continued employment and was therefore protected by the Due Process Clauses of the United States and Alaska Constitutions. . . . Those due process rights included the right to a hearing before being terminated." The superior court concluded that because the University wrongfully denied Taylor such a hearing, the University violated her due process rights. The court reversed Taylor's nonretention

---

[7]     The court cited *Regulatory Comm'n of Alaska v. Tesoro Alaska Co.*, 178 P.3d 1159, 1163 (Alaska 2008).

and awarded backpay of an amount to be determined after further briefing. The University petitioned for review and we granted that petition.

## B. Grimmett Facts And Proceedings

The underlying facts of Grimmett's case are largely undisputed. Grimmett was employed as a police officer with the University of Alaska Anchorage's Police Department until October 2008. Although the record does not contain a copy of Grimmett's employment contract, the University's notice of nonretention to Grimmett references Regents' Policy and University Regulation 04.07.100, and Grimmett does not contend that he was not subject to this policy and regulation under the terms of his employment.

After receiving an anonymous complaint alleging that Grimmett wrote himself parking citations in order to park illegally without consequence, the University interviewed Grimmett about his use of "self-ticketing."[8] Grimmett admitted that he self-ticketed five or six times over the course of about two years. Upon receiving the complaint and Grimmett's admission, the University decided to terminate Grimmett's employment for cause and alternatively to nonretain Grimmett under University Regulation 04.09.040.

Grimmett received notice of the University's decision and subsequently notified the University of his intent to contest his for-cause termination. A few months

---

[8]    Grimmett's "self-ticketing" consisted of parking illegally and writing himself a ticket which he then placed on his vehicle windshield so that other police or traffic enforcement officers would not ticket the vehicle; after Grimmett returned to his illegally parked vehicle, he would destroy the ticket and avoid any consequences for illegally parking.

later, Grimmett notified the University that he also disputed his nonretention.**⁹** The University appointed Cotton as a hearing officer, and both Grimmett and the University submitted briefing. With respect to Grimmett's nonretention, Cotton found Grimmett's challenge was not timely and, even if it had been, the nonretention was "substantively valid" and should be upheld. Regarding Grimmett's for-cause termination, Cotton found "that on balance the University has proven by a preponderance of the evidence that there was just cause to justify termination." University Chancellor Fran Ulmer adopted the

---

**⁹** There is a dispute between the parties regarding the timeliness of Grimmett's appeal of his nonretention. The University issued both the notice of Grimmett's nonretention and the notice of its intent to terminate his employment for cause on the same day. Grimmett timely requested a hearing to contest the for-cause termination, but — as he admitted to the hearing officer — did not timely challenge the nonretention. The hearing officer found that Grimmett's appeal of the nonretention was untimely, but nevertheless addressed the substantive validity of the appeal, finding the nonretention was valid. On appeal, the superior court found that Grimmett waived his right to appeal his nonretention, but it nevertheless also addressed the substantive validity of the nonretention, finding that the University's nonretention policy did not violate due process. In his appeal before us, Grimmett again challenges the nonretention, arguing that it violates due process. Although it is clear that Grimmett's challenge to the nonretention was untimely, both the hearing officer and the superior court addressed the merits of Grimmett's challenge, and both parties have had a full opportunity to be heard on this issue. We have stated that we are "not inclined to cut off rights of appellate review because of some failure on the part of a litigant to comply with the rules." *Orbeck v. Wheeler Constr. Co.*, 394 P.2d 781, 782-83 (Alaska 1964). In *Cook v. Aurora Motors, Inc.*, 503 P.2d 1046, 1049 (Alaska 1972), we set forth the considerations that should be balanced in determining whether the rules should be relaxed. They are the right to appellate review, the willfulness and extent of the rules violation, and the possible injustice that might result from dismissal. *Id.* Given that Grimmett's grievance was not filed inordinately late, that such lateness may have been due to confusion engendered by the University's attempt to terminate Grimmett's employment by the simultaneous use of two separate procedures, and that both the hearing officer and the superior court reached the merits of the nonretention, we will likewise address the merits here.

hearing officer's findings and conclusions. Grimmett appealed this decision to the superior court in Anchorage.

The superior court found: (1) the University's nonretention policy did not violate Grimmett's procedural or substantive due process rights; (2) Grimmett's for-cause termination was justified, as the University terminated him for serious violations of departmental policy; but (3) the University's "decision to terminate Grimmett for cause was objectively unfair given the culture of disregard for parking rules in [the University of Alaska Anchorage Police Department]." Thus, the court found that "[t]he for cause termination of [Grimmett] is set aside," but the "nonretention of [Grimmett] is upheld." Grimmett appeals and the University cross-appeals.

## III.    STANDARD OF REVIEW

"In administrative appeals, we directly review the agency action in question."[10]

We review questions of fact under the "substantial evidence" test.[11] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[12] "We need only determine whether such evidence

---

[10]    *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002) (citing *N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000)).

[11]    *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

[12]    *Id*. (quoting *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963)).

exists, and do not choose between competing inferences."[13] "We do not evaluate the strength of the evidence, but merely note its presence."[14]

We review questions of law where no agency expertise is involved under the "substitution of judgment" test.[15] "The substitution of judgment standard thus applies where the agency's expertise provides little guidance to the court or where the case concerns statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and expertise."[16]

Construction of employment contracts, including questions concerning the implied covenant of good faith and fair dealing when the material facts are not disputed, are reviewed de novo.[17]

Questions of due process present constitutional issues that we review de novo.[18]

---

[13]    *Id.*

[14]    *Id.*

[15]    *Id.*

[16]    *N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000) (quoting *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971)) (internal quotation marks omitted).

[17]    *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992) ("Whether Luedtke's suspension breached the covenant of good faith and fair dealing is a question for the trier of fact. Normally we review such questions only for clear error. However, we may review the application of a legal doctrine to undisputed facts without the usual deference to the superior court." (quoting *Foss Alaska Line, Inc. v. Northland Servs.*, 724 P.2d 523, 526 (Alaska 1986))) (internal citations and quotation marks omitted).

[18]    *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011).

## IV. DISCUSSION

### A. Dismissing Taylor Without A Hearing Denied Her Due Process.

#### 1. Taylor was a for-cause employee.

The University hired Taylor without tenure for a ten-month term.[19]  The University "designates employment not established as at-will to be for cause."[20]  The University concedes that Taylor's employment was never designated as at-will and that her employment was therefore "For Cause Employment" as described in University Regulation R04.01.050(B).  The term "for-cause employment" is often used to denote employment that can be terminated *only* for cause, as opposed to at-will employment, which does not include such protections.[21]  Further, a public employee who can be terminated only for cause has a legitimate expectation of continued employment that, under both federal and Alaska constitutional law, gives rise to a property interest in her

---

[19]     It is undisputed that the University had no obligation to renew Taylor's contract at the end of her employment, and that Taylor would not be entitled to a hearing on a declination to renew.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972).

[20]     UNIVERSITY REGULATION R04.01.050(B).

[21]     *See, e.g.*, *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999) (observing that "[o]ur cases have distinguished between at-will and for-cause employment based on the level of cause needed to terminate the employment relationship"); *Ford v. Trendwest Resorts, Inc.*, 43 P.3d 1223, 1228 (Wash. 2002) (stating that "we are unwilling to abandon the long-standing distinction between at-will employment and for-cause employment"); *Brooks v. Hilton Casinos Inc.*, 959 F.2d 757, 771 (9th Cir. 1992) (describing "for cause employment" as "employment as long as [the employees] did their jobs properly"); *see also Casey v. City of Fairbanks*, 670 P.2d 1133, 1138 (Alaska 1983) (stating that "persons who are employed other than 'at will'. . . have a sufficient property interest in continuing their employment, absent just cause for their removal, to require that they be given notice and an opportunity to be heard under the due process clause of the Alaska Constitution (art. I, § 7) before their employment is terminated").

job.[22]  Such a property interest is protected by the Due Process Clauses of both the United States and Alaska Constitutions.[23]  An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."[24]  In employment termination cases in particular, due process requires"[a]t a minimum" that the employee "receive oral or written notice of the proposed discharge, an explanation of the employer's evidence, and an opportunity to present his position."[25]

The University argues that although it identified Taylor's employment as "for-cause employment," Taylor was not entitled to due process prior to her termination.  It argues that its "nonretention" clause should have put Taylor on notice that despite her "for-cause employment" status she, like an at-will employee, could be terminated without due process.

We acknowledge that "the use of the words 'for cause' does not magically, or always, transform a job into protected property; the focus must remain upon the nature of the employee's legitimate expectation of continued entitlement to his or her job."[26]

---

[22]    *Chijide v. Maniilaq Ass'n of Kotzebue, Alaska*, 972 P.2d 167, 171–72 (Alaska 1999)*; City of North Pole v. Zabek*, 934 P.2d 1292, 1297 (Alaska 1997).

[23]     *City of North Pole*, 934 P.2d at 1297.

[24]    *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)) (internal quotation marks omitted).

[25]    *Id.* (quoting *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1149 (Alaska 1986)) (internal quotation marks omitted).  In employment termination cases "we have consistently held that due process of law . . . requires a pre-termination hearing."  *Id.* (quoting *Odum v. Univ. of Alaska, Anchorage*, 845 P.2d 432, 434 (Alaska 1993)) (internal quotation marks omitted).

[26]    *Bennett v. City of Boston*, 869 F.2d 19, 21 (1st Cir. 1989).

Similarly, although — as noted above — the term "for-cause employment" typically denotes employment that can be terminated only for cause, this does not necessarily mean that an employer could not use the phrase "for-cause employment" in some other way. But if the employer seeks to use the term "for-cause employment" in an unusual and unexpected way, without the protections that are typically associated with "for-cause employment," it must make this clear. As we explain below, Taylor's employment contract, including the terms of the University's nonretention clause, did not clearly indicate that the University intended Taylor's "for-cause employment" to be subject to termination without due process. In other words, the University's contract with Taylor established a legitimate expectation of continued employment and required the University to provide Taylor due process before terminating her.

### 2. Nonretention may not be used for performance-based dismissals.

The University's policies and regulations provided that Taylor, as a for-cause employee, was subject not only to "for cause termination" but also to termination "[i]n the event of layoff, non-retention, or financial exigency."[27] Similar provisions are often present in for-cause employment contracts, and courts "as a rule" have found "that layoffs resulting from a genuine need to reduce the work force or to eliminate certain positions should not be treated as violating a contractual obligation to terminate only for cause."[28] Such procedures may be used for genuine work-force-related needs and may not be used as "merely a pretext for termination."[29]

---

[27] UNIVERSITY REGULATION R04.01.050(B)(2).

[28] STEVEN C. KAHN ET AL., LEGAL GUIDE TO HUMAN RESOURCES § 8.02[5] (1999).

[29] *Id.*

Consistent with these principles, the University's policies and regulations provide detailed information about the circumstances under which "layoff" and "financial exigency" apply, ensuring that such procedures will be used only when there is a genuine need to reduce work force or eliminate certain positions.[30] By contrast, the policies and regulations provide little explanation of the circumstances under which the "nonretention" procedure may be used. Regents' Policy 04.07.100 states that "[t]he university may discontinue or not renew an existing employment relationship through nonretention"[31] but does not elaborate further on when nonretention may be used. Similarly, the associated regulations merely describe the procedures associated with nonretention.[32] There is nothing in the policies or regulations to disturb the expectation established elsewhere that Taylor was a for-cause employee or to indicate that a for-

---

[30] The Regulations specify that layoff may be used when there exists either "a lack of or reduction in available work; a lack of sufficient available funds; a good faith reorganization; or another reason, not reflecting discredit upon the affected employee(s)." UNIVERSITY REGULATION R04.07.110(A). Similarly, a "financial exigency" exists "when the board determines that a shortfall in projected revenues for general operations . . . will have a material adverse effect on the operation of the university generally, or on a major administrative unit or an academic or other unit of a major administrative unit." REGENTS' POLICY P04.09.020(A).

[31] The University's definition of "nonretention" departs from the usual meaning of the term. In cases both from Alaska and other jurisdictions, "nonretention" is frequently found and almost always used to refer only to the power not to renew an employee's contract at the end of her term, not the power to "discontinue" employment mid-term. *See, e.g.*, *Shatting v. Dillingham City Sch. Dist.*, 617 P.2d 9, 10 n.1 (Alaska 1980) (observing that "Alaska's statutory scheme recognizes a distinction between 'nonretention' and 'dismissal' " in the context of teacher employment, in which the former term means the election by an employer not to reemploy a teacher for the school year or school term immediately following the expiration of the teacher's current contract).

[32] UNIVERSITY REGULATION R04.07.100.

cause employee may be terminated for any reason or no reason at all without due process. On the contrary, the context of the nonretention clause suggests that nonretention functions in a way similar to layoff and financial exigency and that, like those two procedures, nonretention is limited to reductions in force or similar non-performance-related exigencies.

In particular, we observe that the Regents' Policy governing nonretention states that nonretention "does not reflect discredit on an employee."[33] In this respect, nonretention is similar to a layoff, which according to University Regulation 04.07.110 similarly "does not reflect discredit on the employee's performance." The University's regulations ensure that a layoff "does not reflect discredit" on the employee by requiring that layoffs be used only for reasons "not reflecting discredit upon the affected employee(s)," such as reorganization or lack of funds.[34] An employee would reasonably expect that the "non-discredit" clause in the nonretention procedure would function in a similar way as the "non-discredit" clause in the layoff procedure, and that accordingly nonretention could be used only for reasons "not reflecting discredit upon the affected employee," such as reorganization or lack of funds. Dismissing an employee via nonretention apart from reasons like layoff, reduction in force, and financial exigency, especially where the employer is doing so for performance-based concerns, cannot help but raise questions in the minds of future potential employers, thus making it difficult if not impossible for the former employee to rebut the suspicion of discredit. In short, by the terms of Taylor's contract and the University's policies and regulations, the

---

[33]    REGENTS' POLICY P04.07.100.

[34]    UNIVERSITY REGULATION R04.07.110.

University was permitted to use the nonretention procedure only for non-performance-based reasons.[35]

### 3. Conclusion

The University's policies and regulations failed to make clear that it intended Taylor's "for-cause employment" to be devoid of the protections that typically define "for-cause employment." Taylor had a legitimate expectation that her "for-cause employment" would continue, and the University was required to provide Taylor due process when it sought to terminate her. Because the University's nonretention policy could not be used to achieve a performance-based dismissal, the University was required to provide Taylor with the due process protections available to her as a for-cause employee. Accordingly, the University violated Taylor's right to due process when it failed to provide her a pre-termination hearing.

### B. Grimmett's Nonretention And For-Cause Termination

Grimmett appeals the superior court's decision upholding his nonretention termination, arguing that the University violated his due process rights when it nonretained him. The University appeals the superior court's decision to set aside Grimmett's for-cause termination, arguing that it did not breach the covenant of good faith and fair dealing.

---

[35] The rule that nonretention proceedings may not be used for performance-based dismissal is consistent with our previous encounters with non-discredit clauses. In both *Stanfill v. City of Fairbanks*, 659 P.2d 579, 582 (Alaska 1983) and *Moore v. State, Dep't of Transp. and Pub. Facilities*, 875 P.2d 765, 770 (Alaska 1994), employers were faced with rules that stipulated that layoffs would not "reflect discredit upon the service of the employee." In both cases, those rules provided that an employee could only be laid off for "reasons which are outside the employee's control." That is, they could only be terminated for issues unrelated to performance.

1. **The University violated Grimmett's due process rights when it nonretained him.**

The University terminated Grimmett's employment through the same nonretention procedure discussed above in Taylor's case. Like Taylor, Grimmett was a for-cause employee entitled to due process. Consequently, the University's use of the nonretention procedure without giving Grimmett due process was a violation of his rights.[36]

2. **The University did not breach the objective prong of the covenant of good faith and fair dealing when it terminated Grimmett for cause.**

After a hearing on the University's for-cause termination of Grimmett, the hearing officer determined that Grimmett had engaged in the practice of self-ticketing. The hearing officer found that other officers had at times self-ticketed as well. The hearing officer found "it blatantly obvious[] that the practice engaged in was wrong, was dishonest, and was in violation of . . . four University policies . . . ." Further, the hearing officer found that "the serious impropriety of the practice [was] exacerbated by the fact that it was committed by a University police officer charged with the enforcement of the law and University rules. Indeed, the officer used his official powers to commit the dishonest acts." Finally, the hearing officer explained:

> [I]n addition to being obviously objectively improper, I conclude that the officers in question, despite certain statements to the contrary, recognized that their actions were wrong and in violation of University rules. Specifically, I find that Officer Grimmett, despite protestations to the contrary at the hearing, recognized that they would at least result in the serious discipline of suspension without pay.

---

[36] As we explain below in Part IV.B.3, because Grimmett's nonretention took effect immediately, this violation of due process may not have been cured by the later for-cause termination proceedings.

The hearing officer concluded that the University had just cause to terminate Grimmett. The University Chancellor adopted the hearing officer's findings and conclusions, and Grimmett appealed that decision to the superior court.

The superior court affirmed the hearing officer's conclusion that Grimmett's termination was justified because Grimmett had committed a serious violation of University policy. The superior court found that "Grimmett clearly violated three of the UPD Policies cited by the University: misuse of authority, conduct unbecoming, and conformance with all laws." However, the court went on to hold that "due to the 'culture of disregard for parking rules in UPD,' " the University behaved in an objectively unfair manner when it fired Grimmett. The court explained that because Grimmett was not "on notice that his conduct could result in termination," the University breached the covenant of good faith and fair dealing when it fired him.

The University argues that the superior court erred in finding that the University breached the objective prong of the implied covenant of good faith and fair dealing and in finding that it treated Grimmett in an objectively unfair manner by terminating his employment for self-ticketing. Relying primarily on the findings of the hearing officer, Grimmett argues that because "UAA PD had created an atmosphere which would provide little to no notice that an officer could or would be terminated for self ticketing," the University breached the covenant of good faith and fair dealing by terminating him for self-ticketing. Because the underlying facts of Grimmett's case are undisputed, we review the application of law to those facts de novo.[37]

At the administrative hearing, the hearing officer considered evidence and testimony that suggested an inconsistent attitude by the University with respect to officer

---

[37] *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992).

parking. The hearing officer found, for example, that the chief occasionally voided tickets, that police officers did not write tickets on other police officers' vehicles, and that there was no broad investigation into the practice of self-ticketing. However, the hearing officer also found that none of this evidence was relevant, as these practices were either officially sanctioned[38] or were unknown to the chief. In contrast, Grimmett's self-ticketing was not sanctioned, and the police chief was made aware of Grimmett's actions only after a letter of complaint and Grimmett's admission.

In *Luedtke v. Nabors Alaska Drilling, Inc.*, we held that the covenant of good faith and fair dealing requires an employer "to act in a manner which a reasonable person would regard as fair" and "requires that the employer be objectively fair."[39] The superior court found that the University violated the *Luedtke* principle when it fired Grimmett; the court reasoned that the University's casual attitude towards parking violations rendered termination for such a violation objectively unfair by failing to put Grimmett on notice that his behavior could result in termination.

On appeal, the University argues that the superior court improperly extended *Luedtke*, and additionally that the University gave Grimmett the notice required by *Luedtke* because Grimmett was aware that self-ticketing could result in termination. Grimmett counters that even though official regulations and policies forbid self-ticketing,

---

[38]    For example, the Parking Director once agreed to void parking tickets that several individuals received while parked at the University for an on-campus conference, but he followed University policies and procedures in doing so.

[39]    834 P.2d at 1224-25. "We have recognized a covenant of good faith and fair dealing in all at-will employment contracts." *Id*. at 1223. In *Luedtke*, we held that an employer violated this covenant "as a matter of law" where "[t]he superior court found that Luedtke was tested for drug use without prior notice, that no other employee was similarly tested, and that Nabors suspended Luedtke immediately upon learning of the results of the test." *Id*. at 1225-26.

the practice was common and sanctioned by lower-ranking members of the police department; therefore, it was unfair for the University to terminate his employment for self-ticketing.

*Luedtke* holds that an employer violates the covenant of good faith and fair dealing if the employer fires an employee without notice or for some other reason that is objectively unfair.[40] Given the deference due to the hearing officer's findings of fact, the University's argument that Grimmett had notice that his actions could result in termination and that Grimmett was not treated in an objectively unfair manner is persuasive. As explained by the hearing officer:

> Grimmett has clearly committed dishonest acts which violate important University policies. Further, he both should have known the nature of these acts and I have found [he] did in fact know the nature of his actions. However, his dishonesty was an attempt to defraud the University of no more than a few dollars of parking fees. He admitted his actions immediately on questioning by Chief Pittman. Further, he was following a practice which other officers had taken and had even been told by a superior that the actions were ok (although I have clearly found that this did not justify his actions).[41] Arguably, it would have been sufficient for Chief Pittman to suspend Grimmett without pay for a significant time rather than to terminate him.
>
> However, I conclude that on balance the University has proven by a preponderance of the evidence that there was just

---

[40]    *Id*. at 1225-26.

[41]    The hearing officer found that Annie Endecott, who was Grimmett's direct supervisor from 2001 until early 2008, told Grimmett that self-ticketing was acceptable. However, Endecott was terminated/nonretained in early 2008, and Grimmett admitted that: (1) he knew self-ticketing was wrong; and (2) he knew he would need to be more careful with self-ticketing after Endecott left because he felt that the two other lieutenants for whom he worked would not approve of the practice.

cause to justify termination because dishonesty and misuse of a police officer's authority violate critically important University policies, and indeed societal values. . . . The University in this case has sent a strong message that its Police Department will not tolerate dishonesty and misuse of authority.

The hearing officer also found that Grimmett knew his actions violated university policy. The University's Regents' Policy 04.07.040, entitled "Corrective Action," explains that dismissal is a possible corrective action in response to "violation of . . . regents' policy[] or university regulation, dishonesty, . . . or other misconduct."[42] Given that Grimmett had notice through the University's policies that his conduct was wrong and could result in termination, and that he actually knew his actions were wrong, we conclude Grimmett — a police officer charged with enforcing the law — was not treated in an objectively unfair manner when the University terminated him because of his unlawful and dishonest conduct. We reverse the superior court's determination that the University violated the covenant of good faith and fair dealing and affirm the University hearing officer's decision, which was adopted by the University chancellor, that the University's for-cause termination was justified.

### 3. Remand is required to determine Grimmett's pay.

On October 13, 2008, Grimmett received a letter notifying him of his nonretention. The letter stated that, per the terms of University Regulation 04.07.100, the University "has decided to provide you with four weeks pay in lieu of notice. Therefore, your non-retention will be effective today, October 13th, which will be reflected as your last day of employment. The four weeks pay in lieu of notice will be included in your final paycheck."

---

[42] P04.07.100.

On that same day, October 13, Grimmett also received a letter notifying him that the University intended to terminate his employment for cause. The letter stated that, per the terms of University Regulation 04.08.80, Grimmett had five working days to request a hearing and that a hearing would take place "no sooner than three working days after receipt of your request." Grimmett's attorney provided timely response to the letter and requested that the hearing "be scheduled for sometime in February/March 2009." Grimmett's hearing occurred on March 24 and 25, 2009. Hearing Officer Cotton issued his recommended decision on June 10, 2009. The chancellor adopted the decision on June 24, 2009. According to University Regulation 04.08.80(B), governing "Termination of Pay" under for-cause termination proceedings, "Employees will normally remain in pay status until the decision of the chancellor . . . is made unless a prior proceeding affording minimum due process has been made available."

Grimmett was paid for a period ending approximately November 13, 2008, in accordance with his nonretention. We have determined the nonretention violated his due process rights. Under University Regulation 04.08.80(B), Grimmett arguably was entitled to remain in pay status until June 24, 2009, the date the chancellor issued the termination-for-cause order. Because no findings were made with respect to Grimmett's pay, including whether a "prior proceeding affording minimum due process" was "made available" to Grimmett prior to the chancellor's decision, and because the parties have not addressed this issue on appeal, we remand to the superior court for further proceedings.

V. **CONCLUSION**

For the foregoing reasons, we AFFIRM the superior court's ruling that the University violated Taylor's due process rights and REMAND for further proceedings concerning the scope of Taylor's backpay remedy. We REVERSE the superior court's upholding of Grimmett's nonretention. We also REVERSE its ruling that the University

violated the covenant of good faith and fair dealing in its for-cause termination of Grimmett, and we AFFIRM the University chancellor's decision upholding the University's for-cause termination. We REMAND for further proceedings concerning Grimmett's pay.