HAGANS, BROWN & GIBBS, a
Professional Corporation,
Appellant,

v.

FIRST NATIONAL BANK OF
ANCHORAGE, Appellee.

No. S–2735.

Supreme Court of Alaska.

Dec. 8, 1989.

John R. Strachan, Law Offices of John Strachan, Anchorage, for appellant.

John R. Beard, Beard & Lawer, Anchorage, for appellee.

Before RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The law firm of Hagans, Brown & Gibbs (Hagans) represented Seair Alaska Airlines, Inc. (Seair) in its contract dispute with Husky Oil N.P.R. Operations, Inc. (Husky). Seair was awarded a substantial judgment in superior court and Husky appealed. Hagans and Seair agreed that Hagans would represent Seair on appeal and would receive 40% of any recovery as compensation for its services at trial and on appeal.

While the appeal was pending Seair went out of business. Its assignee, First National Bank of Anchorage (First National), pursued settlement negotiations with Husky. Against the advice of Hagans, First National declined Husky's final settlement offer. This court reversed the superior court judgment, and First National recovered nothing.

Hagans filed suit against First National, asserting that First National had assumed Seair's position in Seair's contract with Hagans and that by refusing to settle, First National had breached its contractual duty of good faith and fair dealing.

The superior court granted First National's motion for summary judgment on the ground that its refusal to settle could not constitute a breach of good faith. We reverse.

## I. FACTS AND PROCEEDINGS

In 1982 a contract dispute arose between Seair and Husky. *See Husky Oil N.P.R. Operations v. Seairmotive*, 724 P.2d 531, 532 (Alaska 1986). In December 1984, the superior court entered judgment in favor of Seair for about $220,000. Husky appealed.

Seair's trial counsel agreed to represent Seair on appeal. Hagans had not yet been compensated for its services at trial and doubts remained as to whether it would be compensated on a per hour basis or on a contingent fee basis. Hagans and Seair finally agreed that Hagans would receive for its services at trial and on appeal a contingent fee of 40% of any recovery.

In the years prior to its dispute with Husky, Seair had borrowed extensively from First National. In May 1984, Seair's $18 million loan debt was restructured, and First National loaned Seair an additional $4 million. As partial security for the $22 million loan, Seair granted First National a security interest in the proceeds of Seair's claims against Husky.[1]

While the Husky appeal was pending before this court, Seair filed for bankruptcy in the United States Bankruptcy Court for the District of Alaska. It appears that Seair eventually moved for voluntary dismissal of the bankruptcy proceeding and went out of business. First National proceeded to recover what it could of Seair's accounts.

In August 1986, Husky offered to pay $150,000 to compromise the judgment. Its offer was directed to Seair, Hagans and First National.

John Beard, First National's attorney, discussed the case and Husky's offer with Hagans' Sanford Gibbs. Gibbs told Beard that his firm had represented Seair on a contingent fee basis. Hagans sent Beard copies of an unsigned contingent fee contract and a letter from Seair's president approving the contingent fee agreement. Gibbs told Beard that the judgment in favor of Seair might well be reversed on appeal. He recommended that First Na-

1. First National and Hagans disagree about whether the security interest in the proceeds of

the Husky claim was granted in May 1984 or in August 1986.

tional make a counteroffer of $200,000. He also advised it to settle for $150,000 if the counteroffer .was rejected.

On August 29, First National made a $200,000 counteroffer. Husky rejected the offer, but countered with its own offer of $175,000 on September 4.

After receiving Husky's offer, Beard telephoned Gibbs and told him that First National would accept the offer if Hagans would agree to accept $25,000 in satisfaction of any claims to the settlement proceeds. Gibbs refused to accept First National's offer of $25,000, but he strongly urged First National to accept Husky's latest offer.

First National did not accept Husky's offer. On September 12, 1986, this court reversed the judgment. *Husky Oil*, 724 P.2d 531.

In December 1986, Hagans sued First National. Hagans asserted in its complaint that First National, as assignee of Seair's interest in the Husky litigation, had assumed the rights and duties of Seair under Seair's agreement with Hagans. Hagans further asserted that by refusing Husky's settlement offer of $175,000, First National had violated the duty of good faith and fair dealing implied in Seair's contract with Hagans.

First National answered Hagans' complaint, denying that it had assumed Seair's rights and duties under its contract with Hagans. First National moved for summary judgment on two grounds. First National argued that Hagans' rights were contingent upon recovery of settlement, and that its decision not to settle was not in breach of any duty. In addition, First National argued that even if the case had been settled, Hagans, an unsecured creditor of Seair, would have had a claim inferior to that of First National, a secured creditor.

The trial court resolved the first issue in First National's favor, and granted its motion for summary judgment. The trial court did not reach the second issue. Hagans appeals.

## II. DISCUSSION

### A. INTRODUCTION.

On its motion for summary judgment, First National argued that its actions did not constitute a breach of the duty of good faith and fair dealing, and that its security interest would have entitled it to retain the entire proceeds of a judgment or settlement.

The trial court did not reach First National's second argument. It renews its second argument here as an alternative basis for upholding the decision of the trial court.[2] "This court will not disturb a proper result, regardless of the reasoning employed below." *Hale v. Fireman's Fund Ins. Co.*, 731 P.2d 577, 580 (Alaska 1987).

First National's second argument is misguided. In order to establish that First National breached the contractual duty of good faith and fair dealing, Hagans must establish that it assumed the position of Seair in Seair's contract with Hagans. *See OK Lumber v. Providence Washington, Inc.*, 759 P.2d 523, 526 (Alaska 1988).[3] If First National assumed the position of Seair in Seair's contract with Hagans, then it is personally liable to Hagans for an amount equal to 40% of any recovery. The question of which party has the superior claim to the recovery is irrelevant. Therefore, we do not consider First National's second argument.

---

2. First National also argues briefly that it did not assume Seair's position in Seair's contract with Hagans. At trial, it raised this argument only cursorily in its memorandum. At the hearing on the motion for summary judgment it asked the court to assume for the sake of argument that it *had* assumed the contract. Issues not properly raised or briefed at trial are not properly before this court on appeal. *Wickwire v. McFadden*, 633 P.2d 278 (Alaska 1981).

3. The duty of good faith and fair dealing is a product of the relationship created by contract, and there is no tort duty of good faith and fair dealing independent of that relationship. *OK Lumber*, 759 P.2d at 526 (injured third-party claimant may not sue an insurer for breach of the duty of good faith and fair dealing).

## B. STANDARD OF REVIEW.

When reviewing a grant of summary judgment this court must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment on the law applicable to the established facts. *Zeman v. Lufthansa German Air Lines*, 699 P.2d 1274, 1280 (Alaska 1985).

> The party opposing summary judgment is not required to show it will prevail at trial. But if the movant establishes prima facie that it is entitled to judgment as a matter of law, the party opposing summary judgment must demonstrate that there exists a genuine issue of material fact to be litigated.

*Wassink v. Hawkins*, 763 P.2d 971, 973 (Alaska 1988).

## C. DID FIRST NATIONAL BREACH ITS DUTY OF GOOD FAITH AND FAIR DEALING BY FAILING TO ACCEPT HUSKY'S FINAL SETTLEMENT OFFER?

Hagans contends that First National's refusal to accept Husky's final settlement offer was prompted by Hagans' refusal to compromise its fee. Hagans further contends that for this reason First National's refusal constitutes a breach of its implied duty of good faith and fair dealing.

First National contends that the decision whether to accept an offer of settlement rests wholly in the discretion of the client; therefore, whatever its motivation, the decision cannot constitute a breach of the implied duty of good faith and fair dealing.

Under a contingent fee agreement, an affirmative recovery is a condition of the client's payment obligation to the attorney. As First National points out, the occurrence of this condition is under the control of the client. *See Giles v. Russell*, 222 Kan. 629, 567 P.2d 845, 850 (1977); *Raabe v. Universe Tankships*, 263 F.Supp. 786 (D.N.Y.1966). It errs, however, in inferring that the client cannot become liable to the attorney by exercising this control.

■ Good faith between contracting parties requires the client to exercise this control in a manner consistent with the reasonable expectations of the parties.[4] *See Carrico v. Delp*, 141 Ill.App.3d 684, 95 Ill.Dec. 880, 490 N.E.2d 972, 976 (1986); *see also Alyeska Pipeline Service v. Aurora Air Service*, 604 P.2d 1090, 1093 (Alaska 1979) (relying on the duty of good faith, court rejected "contention that privilege arising from a contractual right is absolute and may be exercised regardless of motive."); *Hausam v. Wodrich*, 574 P.2d 805, 809 (Alaska 1978) (purchase agreement which was "contingent upon buyer's inspection and approval of all books and records" read by court to "require the exercise of honest judgment and good faith"). Should the client fail to exercise control over the litigation in a manner consistent with the reasonable expectations of the parties, the client may become liable to his attorney. *Cf. Giles v. Russell*, 567 P.2d at 850 ("the client may, in good faith, settle or compromise his litigation … without the knowledge or consent of the attorney, and such settlements are favored by law where they are honestly made for the simple purpose of ending the litigation with no intention of taking advantage of the attorneys").

■ Contingent fee contracts offer a difficulty not ordinarily present in contracts conditioned on a party's satisfaction with the other party's performance. Because any settlement amount will be reduced by the attorney's contingent fee, the subject of the client's consideration, the net recovery, is affected by the terms of the contingent fee agreement. Dissatisfaction with the net recovery may reflect dissatisfaction with the gross offer, the fee agreement, or both. But only in certain cases should dissatisfaction with the net recovery result in liability. Consider the following hypothetical cases:

(1) A client receives a settlement offer of $100,000, which is reduced by the at-

---

4. Parties to a contract have mutual obligations of good faith and fair dealing. *Alyeska Pipeline Service v. H.C. Price Co.*, 694 P.2d 782, 788 (Alaska 1985); Restatement (Second) of Con- tracts § 205 (1979) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

torney fee to $70,000. Unless the client can recover at least $80,000, it would be more profitable for him to sacrifice the claim and write off the loss. His attorney advises him that the present offer is likely the best possible offer. He suggests to the attorney that the attorney reduce his fee by $10,000. The attorney refuses, and the client refuses the settlement offer.

(2) A client receives a settlement offer of $100,000, which is reduced by the attorney fee to $70,000. Like many clients, this client has no fixed threshold below which he cannot settle. Instead he merely hopes to obtain the best possible recovery. He sincerely believes that his claim is worth more than $100,000. His attorney advises him to accept. He suggests to his attorney that he would accept if the attorney reduces his fee by $10,000. The attorney refuses, and, because the client believes a more favorable settlement can be reached, the client refuses the settlement offer.

(3) Same as (2), except that the client believes $100,000 is likely the best possible settlement. Because he wishes to force the attorney to lower his fee, he refuses the offer.

In our judgment, only the client in hypothetical (3) may have failed to exercise honest judgment. In reviewing these hypotheticals, the question which informs our consideration is this: If the client had not hoped to renegotiate the attorney fee, would he or she have accepted the settlement offer? We believe this question is a proper standard for good faith and fair dealing. Thus, if there is some genuine

dispute as to the answer to this question, summary judgment must be denied.

It must be emphasized that the client retains primary control of the settlement of claims [5] and is only subject to liability if it can be shown that the decision to settle or not to settle was made with the intent of taking *advantage* of the attorney. *See Giles v. Russell*, 567 P.2d at 850 ("settlements are favored by the law where they are honestly made for the simple purpose of ending the litigation with no intention of taking advantage of the attorneys"). A client does not breach a contingent fee agreement merely by refusing to settle, even if such refusal is foolish. *Bernard v. Moretti*, 34 Ohio App.3d 317, 518 N.E.2d 599, 601 (1987); *see also Knoll v. Klatt*, 43 Wis.2d 265, 168 N.W.2d 555, 558–59 (1969) ("the claim belongs to the client and not to the attorney; the client has a right to compromise or even abandon his claim if he sees fit to do so") (quoting *Goldman v. Home Mutual Ins. Co.*, 22 Wis.2d 334, 126 N.W.2d 1, 5 (1968)).

Hagans has produced evidence indicating that First National's decision to decline Husky's final settlement offer was prompted by dissatisfaction with the contingent fee agreement.[6] The bank told Hagans that it would accept Husky's offer only if Hagans substantially reduced its fee. Members of the Hagans firm repeatedly advised First National that the judgment of the trial court might well be reversed on appeal. Further, it must have appeared unlikely to First National that it would be successful in obtaining a more

---

**5.** The Model Code of Professional Responsibility provides guidance on this issue:

In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise, the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As typical examples in civil cases, it is for the client to decide whether he will accept a settlement offer....

EC 7–7 (1989–90).

**6.** As Judge Wisdom has observed:

The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.

*Croley v. Matson Navigation Company*, 434 F.2d 73, 77 (5th Cir.1970), *quoted in* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2730 at 237 (1983).

favorable settlement offer; its offer of $200,000 had already been refused.

In response to Hagans' evidence, First National offers no reasons for its actions. Instead, it merely argues that its reasons are irrelevant.

Hagans has produced evidence sufficient to create a genuine issue of material fact as to whether First National intended to take advantage of Hagans in declining Husky's final settlement offer. The trial court erred in granting First National's motion for summary judgment.

## III. CONCLUSION

The decision of the trial court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

MATTHEWS, C.J., not participating.