HAGANS, BROWN & GIBBS, a
Professional Corporation,
Petitioner,

v.

FIRST NATIONAL BANK OF
ANCHORAGE, Respondent.

No. S–4165.

Supreme Court of Alaska.

April 12, 1991.

Rehearing Denied May 22, 1991.

John R. Strachan, Anchorage, for peti-
tioner.

John R. Beard, Beard & Lawer, Anchor-
age, for respondent.

Before RABINOWITZ, C.J., and
BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Hagans, Brown & Gibbs (Hagans) peti-
tioned this court to review a superior court
order dismissing its claims against First
National Bank of Anchorage (First Nation-
al). The order was issued on remand from
this court's decision in *Hagans, Brown &
Gibbs v. First National Bank of Anchor-
age*, 783 P.2d 1164 (Alaska 1989), and
leaves only First National's counterclaim
for determination at trial. We granted re-
view,[1] Appellate Rule 401, and now re-
verse.

---

1. Initially this case was expedited in order to
resolve the issues before trial on the counter-

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are detailed in our opinion in *Hagans,* 783 P.2d 1164. Stated briefly, Hagans represented Seair Alaska Airlines, Inc. (Seair) in a contract dispute with Husky Oil N.P.R. Operations, Inc. (Husky). *Id.* at 1165. The superior court entered judgment in favor of Seair for about $220,000. Husky appealed. Hagans and Seair then agreed that Hagans' contingent attorney fees for the trial and appeal would be forty percent of any recovery.

Seair later granted First National a security interest in the proceeds of its claim against Husky as partial security for a restructured loan. Seair ceased doing business while the appeal was pending. First National pursued settlement negotiations with Husky. Husky offered $150,000 to compromise the claims of Seair, First National, and Hagans. Hagans recommended to First National that it make a counteroffer of $200,000, but recommended also that Seair accept the $150,000 if the counteroffer was rejected. Husky rejected the counteroffer, but counteroffered to settle for $175,000. First National's lawyer told Hagans that First National would accept the $175,000 if Hagans would agree to accept only $25,000 in attorney fees, instead of the $70,000 it would receive under the contingent fee agreement. Hagans refused to accept that reduction, but nonetheless urged First National to accept the latest Husky offer and work out the fee arrangement later. *Id.* at 1166.

First National did not accept the offer, and the judgment was reversed. *See Husky Oil N.P.R. Operations v. Sea Airmotive, Inc.,* 724 P.2d 531, 532 (Alaska 1986).

Hagans filed a complaint against First National asserting that First National assumed the rights and duties of Seair under Seair's agreement with Hagans, and that First National breached its implied duty to Hagans of good faith and fair dealing by refusing to settle. *Hagans,* 783 P.2d at 1166. The superior court granted First

National's motion for summary judgment on the grounds that Hagans' rights were contingent on a recovery, and First National's decision not to settle was not a breach of duty. *Id.*

This court reversed the summary judgment, holding that a client may be liable to an attorney for refusing to accept a settlement offer if the client believes it is likely the best possible offer, but wishes to force the attorney to lower the previously agreed upon fee. *Id.* at 1168. A party acts in bad faith if the client's motive in rejecting a settlement offer is to force the attorney to renegotiate the fee. *Id.* We concluded that Hagans produced evidence sufficient to create a genuine issue of material fact as to First National's motive in declining the settlement offer. *Id.* at 1169. We dismissed as irrelevant First National's argument that it had a superior claim to the settlement because it was a secured creditor. *Id.* at 1166. We said:

> In order to establish that First National breached the contractual duty of good faith and fair dealing, Hagans must establish that First National assumed the position of Seair in Seair's contract with Hagans. If First National assumed the position of Seair in Seair's contract with Hagans, then it is personally liable to Hagans for an amount equal to 40% of any recovery.

*Id.* (citation omitted).

Hagans then amended its complaint to add claims for misrepresentation and for exemplary damages. First National amended its answer to include a counterclaim based on its assertion that Hagans did not inform First National that the Husky judgment should be and would be reversed.

On remand the superior court again dismissed Hagans' complaint. The court said:

> The evidence ... is undisputed. First National did not assume Seair's duties under Seair's fee contract with the Plaintiff. Summary judgment is therefore granted dismissing count one.... Count

---

claim, which was set for October 15, 1990. At oral argument on October 4, we were advised

that the trial on the counterclaim had been vacated.

two, First National again makes a powerful argument that the evidence is undisputed that the Plaintiff was not deceived, and that it did not rely on any alleged deception in any event.... Summary judgment is granted there being no disputed issues of material fact on those key points. Count three is dismissed because with the dismissal of counts one and two, there's not anything for punitive damages to be awarded on....

## II. DISCUSSION

We previously reversed a grant of summary judgment to First National once in this case. *Hagans*, 783 P.2d 1164. In our earlier decision, we did not address the issue of whether First National had actually assumed Seair's position in Seair's contract with Hagans because the issue was not properly raised or briefed at trial. *Id.* at 1166 n. 2. On remand, First National argued in a motion for summary judgment that it did not assume Seair's obligation to pay Hagans, but simply received an assignment from Seair of the company's right to payment by Husky. The trial court concluded that there was no evidence to suggest that First National had in fact assumed the contract. We discuss this issue below, as well as the trial court's conclusion that the evidence is undisputed that Hagans was not deceived nor relied on any alleged deception by First National.

### A. STANDARD OF REVIEW

This is a review of a grant of summary judgment. "In reviewing the propriety of a summary judgment, we must view the facts in the light most favorable to the non-moving party. Summary judgment is upheld if the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *O.K. Lumber v. Providence Washington Ins.*, 759 P.2d 523, 525 n. 2 (Alaska 1988) (citations omitted).

### B. HAGANS' CLAIM THAT FIRST NATIONAL ASSUMED THE POSITION OF SEAIR

We previously held that a client is subject to the standard of good faith and

fair dealing in its relationship with its attorney when it decides whether to accept a settlement offer. *Hagans*, 783 P.2d at 1168. A client does not meet this standard if its decision not to settle is made with the intent of taking advantage of the attorney. *Id.* We said: "Hagans has produced evidence sufficient to create a genuine issue of material fact as to whether First National intended to take advantage of Hagans in declining Husky's final settlement offer." *Hagans*, 783 P.2d at 1169. Thus all that is at issue relative to Hagans' first claim for relief is whether the duty of good faith and fair dealing arose in these circumstances.

"The duty of good faith and fair dealing is a product of the relationship created by contract, and there is no tort duty of good faith and fair dealing independent of that relationship." *Hagans*, 783 P.2d at 1166 n. 3 (citing *O.K. Lumber*, 759 P.2d at 526). Thus the duty depends upon the nature of the contractual relationship between First National and Hagans. In *Hagans*, we specifically said:

In order to establish that First National breached the contractual duty of good faith and fair dealing, Hagans must establish that it assumed the position of Seair in Seair's contract with Hagans.

783 P.2d at 1166.

The superior court found the evidence to be "undisputed" that First National did not assume the position of Seair. We disagree.

The following evidence was before the superior court:

1. Mr. Beard, an attorney for First National, wrote a letter to Mr. Mullane of Husky on August 29, 1986, in response to Husky's first offer of settlement. The letter read in part:

I am writing on behalf of the First National Bank of Anchorage, the assignee of [Seair], in reply to your letter of August 13 and to advise you that $200,000 U.S. will be accepted in settlement of this matter.

I can assure you that *this offer is made on the basis of consultations with, and the concurrence of, Mssrs.*

*Hagans and Gibbs* and Mr. Gay, Seair's president.

(Emphasis added).

2. In his deposition, Mr. Calladine of First National agreed when asked, "But the most you could get was what Seair was entitled to?" However, Mr. Calladine also insisted that "we weren't convinced that [Hagans was] entitled to the 40 percent."

3. In his Supplemental Affidavit, Mr. Calladine stated:

> Mr. Beard also told me that [Hagans] thought there was a good chance Seair's judgment could be reversed on appeal, but also thought a $200,000 counter-offer should be made to Husky.
>
> After discussing the matter, the bank's president (Daniel H. Cuddy) and I decided to make the counter-offer recommended by plaintiff. We considered that Husky's willingness to offer a substantial payment, and [Hagans'] willingness to risk whatever contingent rights it might have on a counter-offer, indicated that both of them thought there was a reasonable likelihood that the $250,000 judgment would be affirmed.

From this evidence it may be inferred that First National both sought and followed Hagans' advice as a client would seek advice from an attorney. This evidence also tends to show that First National acknowledged Hagans' claim to the contingent fee in deciding whether to follow Hagans' advice. Although Mr. Calladine at the same time refers to Hagans' claims as "questionable," his statements indicate that First National sought Hagans' advice knowing that Hagans expected forty percent of any settlement as fees for its services.

In addition, Hagans asserts the following in its answers to interrogatories:

> [W]hile the [Husky case] was pending before the Alaska Superior Court, Seairmotive Inc. filed a petition in bankruptcy in Anchorage. The First National Bank participated in the bankruptcy proceeding. During the bankruptcy proceeding plaintiffs filed with the Bankruptcy Court a motion and order for the approval for [Hagans'] continued representation of Seairmotive Inc. in the Husky Oil pro-

ceeding and to approve the [Hagans'] contingency fee agreement. That application was granted with the knowledge of defendants. Subsequently, the bankruptcy proceeding was dismissed. . . .

Hagans argues that if First National had not already assumed Seair's obligation to pay Hagans, it did so through its actions in the bankruptcy proceedings. Since the trial court granted summary judgment to First National, we must view the facts in the light most favorable to Hagans. *See O.K. Lumber,* 759 P.2d at 525 n. 2.

Finally, First National never treated its claim to the Husky judgment strictly as collateral under its security agreement, indicating that it was more than just a secured party with a superior claim to the judgment. First National admitted at oral argument that it had not taken steps to notify its other account debtors as required by the security agreement.

All of the above evidence supports Hagans' contention that First National assumed the position of Seair in the contingent fee arrangement. It is not undisputed, but rather raises genuine issues of material fact which should be submitted to a jury. Therefore summary judgment on Hagans' first claim for relief was inappropriate.

## C. HAGANS' MISREPRESENTATION CLAIM

■ Hagans' second claim for relief was added in its First Amended Complaint filed May 11, 1990. The basis of Hagans' claim is that if First National did not in fact assume Seair's obligation to pay Hagans, then First National deceived Hagans into thinking that it had. First National argues that Hagans knew that it was not the bank's attorney, and in the alternative that if Hagans mistakenly believed that First National had assumed the position of Seair it was due to Hagans' own confusion over the distinction between an assumption and an assignment, not due to any misleading on First National's part. First National also asserts that this claim was not brought within the statutory limitations period.

Hagans' claim appears to be based alternately on intentional or negligent misrepresentation. The heart of the claim is that First National "through its agents intentionally or negligently failed to disclose that the defendant did not intend to be bound by the terms of the contingency contract," and that Hagans "could have taken action to protect its own interest in preserving the settlement opportunity had it known in sufficient time that the defendant would deny that it had substituted for Sea Airmotive in the contingency fee contract."

■ "To prevail in an action for fraudulent or negligent misrepresentation the plaintiff must prove the existence of either an affirmative misrepresentation or an omission where there is a duty to disclose." *Matthews v. Kincaid,* 746 P.2d 470, 471 (Alaska 1987). Hagans' argument is that First National failed to disclose that it would not honor the fee arrangement. The duty to disclose arises when facts are concealed or unlikely to be discovered because of the special relationship between the parties, the course of their dealings, or the nature of the fact itself. *Matthews,* 746 P.2d at 471–72. In this case the very fact that is alleged to have been concealed is the relationship between the parties. There is ample evidence from which one may infer a course of dealing between the parties as attorney and client. This evidence includes the August 29, 1986 letter from Mr. Beard to Husky stating that First National's counteroffer was made after "consultations with, and the concurrence of, Mssrs. Hagans and Gibbs"; Mr. Hagans' August 27, 1986 letter to Mr. Beard which urged First National to "seriously consider" Husky's offer and which explained the consequences if the Husky judgment were reversed; and Mr. Gibbs' September 9, 1986 letter to Mr. Beard which strongly urged First National to accept Husky's second offer of settlement.

The same evidence which tends to show that First National assumed the position of Seair in the fee arrangement with Hagans also supports Hagans' contention that First National concealed its true relationship with Hagans and thereby induced Hagans to treat First National as a client. It was their entire course of dealings which tends to show that First National assumed the position of Seair, and that arguably led Hagans into believing First National would honor the fee agreement. Therefore, summary judgment on Hagans' second claim for relief was also inappropriate.[2]

The superior court dismissed Hagans' claim for punitive damages on the ground that there was no longer any underlying claim for relief to support it. In view of our disposition of the superior court's orders on summary judgment, its dismissal of Hagans' punitive damage claim is vacated.

## III. CONCLUSION

The decision of the trial court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

---

**2.** First National's statute of limitations argument rests on a factual determination concerning when First National disclosed to Hagans that it did not intend to assume Seair's obli-

gation to pay Hagans. Since there is a genuine dispute regarding this material fact, the statute of limitations issue cannot be resolved as a matter of law.