*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KEVEN WINDEL and MARLENE WINDEL, | ) ) ) | Supreme Court No. S-15801 |
| Appellants, | ) ) | Superior Court No. 3PA-05-01317 CI |
| v. | ) ) | O P I N I O N |
| THOMAS CARNAHAN, | ) ) | No. 7128 - September 23, 2016 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Kenneth P. Jacobus, P.C., Anchorage, for Appellants. Chris D. Gronning, Bankston Gronning O'Hara, P.C., Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

This case has returned to us for review of the superior court's decision of attorney's fees issues following our remand in *Windel v. Mat-Su Title Insurance Agency, Inc.* (*Windel I*).[1]  The underlying lawsuit involved the validity of an easement that

---

[1]    305 P.3d 264 (Alaska 2013).  *Windel I* encompassed claims against a title

(continued...)

Thomas Carnahan claimed extended over property belonging to Keven and Marlene Windel, as well as Carnahan's responsibility for damage allegedly caused by improvements within that easement. The substantive issues were resolved in Carnahan's favor in *Windel I*, but we remanded the case to the superior court for its reconsideration of attorney's fees issues. On remand, the superior court awarded attorney's fees to Carnahan under Alaska Civil Rule 68, finding that, when the case was viewed in its entirety, he had prevailed and had done better than his offer of judgment.

The Windels again appeal. They argue that the superior court erred in its analysis of Rule 68, failed to decide whether Carnahan's offer of judgment was valid, and erred in disregarding objections to specific billing entries in Carnahan's claim for fees. We conclude that the superior court did not err in its Rule 68 analysis or in its attorney's fees award, and we therefore affirm the judgment of the superior court.

## II.     FACTS AND PROCEEDINGS

### A.     First Appeal And Our Decision In *Windel I*

On their first appeal in 2011, the Windels challenged the superior court's rulings that Carnahan's claimed easement across their property was valid, that Carnahan was not responsible for the easement's continued maintenance, and that Carnahan was entitled to an award of attorney's fees under Rule 68.[2] In *Windel I* we affirmed the

---

[1](...continued)
insurance company that are no longer at issue on this appeal.

[2]     *Id.* at 270. Rule 68 provides, in essence, that when a party offers to allow the entry of judgment for specified terms, the other party rejects the offer, and the offering party goes on to achieve a result more favorable than the terms of its offer, the offering party will be deemed the prevailing party and will be entitled to an enhanced award of attorney's fees compared to that recoverable under Alaska Civil Rule 82.

superior court's ruling that the easement was valid[3] and held that the superior court did not err in declining to hold Carnahan responsible for the easement's future maintenance and improvements.[4] But we remanded the case to the superior court for reconsideration of attorney's fees.[5]

On appeal the Windels had made alternative arguments about attorney's fees, involving both Rule 68 and Rule 82. The Rule 68 arguments stemmed from an offer of judgment Carnahan made in 2006, a year after the Windels filed suit. The offer of judgment had four essential terms: (1) a declaratory judgment that Carnahan's claimed easement was valid; (2) payment to the Windels of $10,000 in trespass damages; (3) an award of attorney's fees and costs to the Windels; and (4) dismissal of Carnahan's counterclaims.[6] The Windels did not accept the offer.[7]

The Windels' first Rule 68 argument on appeal was based on a partial settlement agreement reached in early 2009, after the superior court had ruled on summary judgment that Carnahan's claimed easement was valid. Under the settlement agreement the parties dismissed their remaining damages claims against each other except with regard to the Windels' recently raised nuisance abatement claim, which alleged they were damaged when work within the easement exacerbated ponding on their

---

[3]     *Id.* at 270-73.

[4]     *Id.* at 274.

[5]     *Id.* at 281.

[6]     *Id.* at 268.

[7]     *Id.*

property.[8]  For the nuisance abatement claim, the parties agreed to hire an independent engineer to evaluate its basis and recommend a resolution; if either party declined to accept the engineer's recommendation they would submit the claim to the judge for decision.[9]  The Windels argued in the first appeal that this partial settlement agreement resolved all claims for attorney's fees incurred up to early 2009, when they asserted their nuisance abatement claim.

The Windels' second Rule 68 argument was that if the partial settlement agreement did not resolve the attorney's fees issues, it was error for the superior court to decide that Carnahan beat his offer of judgment.[10]

The Windels' Rule 82 arguments addressed the superior court's decision that the case could be divided into two segments for purposes of attorney's fees: the first "concerning the validity of the easements and associated damages issues, and the second solely regarding the nuisance claim."[11]  The superior court decided that Carnahan was the prevailing party in the first segment because he beat his offer of judgment but that neither party prevailed in the second segment.[12]  The Windels argued that for Rule 82 purposes the case should be considered not as separate segments but as a whole, and that under such an analysis neither party prevailed because one main issue, the validity of the easement, was resolved in Carnahan's favor and the other main issue, nuisance, was

---

[8]  *Id.* at 269.

[9]  *Id.*

[10]  *Id.* at 277.

[11]  *Id.* at 276 (quoting the superior court's order).

[12]  *Id.*

resolved in the Windels' favor.[13]   Alternatively, the Windels maintained that under a bifurcated analysis they should have been considered the prevailing parties because the case's first segment settled (and Carnahan was therefore entitled to no fees for it) and they prevailed in the second part, which involved only their nuisance claim.[14]

In *Windel I* "we first reject[ed] the Windels' argument that the 2009 settlement agreement resolved attorney's fees for the litigation up to the point of the settlement."[15]   Noting that an amendment to the settlement agreement stated that "[t]he final judgment *will be subject to motions for costs and attorney's fees, and to appeal*,"[16] we determined that the agreement "clearly reflect[ed] that the parties expected and left open questions of which party would be entitled to recover costs and attorney's fees for both the litigation up to the settlement agreement and the anticipated future litigation over the equitable nuisance abatement claim."[17]   We therefore concluded that the settlement agreement did not preclude Carnahan from recovering attorney's fees for the entire litigation.[18]

We then considered whether the superior court had correctly determined that Carnahan beat his offer of judgment as to the first part of the litigation.  We remanded the Rule 68 issue to the superior court, concluding that "on the record before us it [was] impossible to determine whether (1) it was permissible to limit the application

---

[13]   *Id.* at 277.

[14]   *Id.*

[15]   *Id.*

[16]   *Id.* at 278 (emphasis in original).

[17]   *Id.*

[18]   *Id.* at 279.

of Rule 68 to a bifurcated portion of the superior court proceedings, and (2) Carnahan 'beat' his offer of judgment."[19]  Noting that the purpose of Rule 68 is "to encourage settlements and avoid prolonged litigation,"[20] we held that "an offer of judgment must encompass every claim in the litigation."[21]  We observed that Carnahan had "attempted to comply" with the requirement that "an offer of judgment [must] include all claims between the parties and be capable of completely resolving the case by way of a final judgment if accepted"[22] by including language in his offer that "seem[ed] broad enough to include not only Carnahan's post-offer assertion of a counterclaim for easement-interference damages, but also the Windels' post-offer assertion of nuisance damages and equitable abatement relief."[23]  We concluded that the superior court's decision to bifurcate the litigation for attorney's fees purposes was "unexplained and appear[ed] contrary to our stated interpretation of Rule 68."[24]

We observed that because of the "open bifurcation question," we were unable to determine whether Carnahan had beat his offer of judgment.[25]  If the offer of judgment properly applied to the entire litigation, then the superior court's comparison of the offer to the litigation only up to the time of the partial settlement would have been

---

[19]     *Id.*

[20]     *Id.* (citing *Mackie v. Chizmar*, 965 P.2d 1202, 1205 (Alaska 1998)).

[21]     *Id.* at 279-80 (citing *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1088 (Alaska 2008)).

[22]     *Id.* at 280 (quoting *Progressive Corp.*, 195 P.3d at 1088).

[23]     *Id.* (footnote omitted).

[24]     *Id.* (citing *Progressive Corp.*, 195 P.3d at 1088).

[25]     *Id.*

error.[26]  We also noted that if on remand the superior court considered the entire litigation for purposes of the comparison, it should consider efforts Carnahan made voluntarily in 2007 to abate potential damage to the Windels' property as well as "the additional court-ordered nuisance remediation" that resulted from the superior court's later decision of the Windels' nuisance abatement claim.[27]

Finally, we addressed the issue of Rule 82 fees in case the superior court found on remand that Carnahan was not entitled to fees under Rule 68.[28]  We noted that there was "considerable tension" in the superior court's treatment of the attorney's fees issues when it first considered the litigation as a whole — determining that Carnahan prevailed on the "main issue" of the validity of the easement — but then decided that the case could be bifurcated and treated as two segments.[29]  We pointed out that the bifurcation "suggests the [superior] court then considered the litigation to include two main issues": the validity of the easement and the Windels' nuisance abatement claim.[30] We also observed that "[t]here should be little dispute" that Carnahan prevailed on the issue of the easement's validity; we suggested, however, that "if, as it seems, the superior court considered the equitable nuisance abatement claim as another main issue, . . . it may be difficult to sustain a determination that neither party prevailed on this issue" in

---

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

[29]    *Id.* at 280-81.

[30]    *Id.*

light of Carnahan's 2007 voluntary remediation work and the additional remediation ordered by the court, both of which would seem to work in the Windels' favor.[31]

We concluded that "the complex competing concerns and interests in determining the prevailing party or parties" warranted remand to the superior court. We asked the superior court to "render sufficient findings of fact and conclusions of law [on remand] in the event further appellate review prove[d] necessary."[32]

## B.    Superior Court Proceedings After Remand

On remand, in a lengthy written order issued in August 2014, the superior court interpreted our decision in *Windel I* to hold that it had erred in considering the case as two segments subject to separate analyses. The superior court instead considered the litigation as a whole and ruled in favor of Carnahan, concluding that under Rule 68 Carnahan "fared better at the end of [the] litigation than in his January 2006 Offer of Judgment."

As we had directed, the superior court took into account the voluntary and court-ordered remediation costs in determining how well Carnahan fared. But the superior court disagreed with our description of one of the relevant facts. In *Windel I* we stated that Carnahan had voluntarily constructed the 2007 culvert.[33] But on remand the superior court found that "[u]pon careful review of the record, it appears that [Carnahan] did not build the 2007 culvert." Because "the building of the 2007 culvert was not a voluntary remediation effort attributable to [Carnahan]," the superior court determined

---

[31]    *Id.*

[32]    *Id.*

[33]    *Id.* at 269, 278, 280, 281.

that Carnahan only had to spend $4,000 — the amount of the additional court-ordered remediation.

The superior court then conducted a point-by-point comparison of the offer of judgment and the entire litigation. The court ruled that Carnahan prevailed on the first term of his 2006 offer of judgment, which would have declared that the easement was valid, because the court granted him summary judgment on that issue. The court next determined that Carnahan prevailed on the third term of his offer, which would have provided for judgment in the Windels' favor for attorney's fees and costs, on grounds that the Windels "were not prevailing parties as to any important aspect of the case and were not entitled to seek attorney's fees or costs." With respect to the fourth term of Carnahan's offer, the court found that Carnahan "agreed to withdraw his counterclaims as part of the [partial settlement agreement], just as he had offered in his 2006 offer of judgment," presumably meaning that the court found this point to be a wash: Carnahan did no better or worse than his offer. And finally, with respect to the nuisance claim that the settlement agreement had reserved for further negotiation or decision, the superior court found that Carnahan prevailed because the $4,000 he had to spend in additional remediation was sufficiently less than the $10,000 he offered to pay the Windels in his offer of judgment.

Finding that Carnahan beat his offer of judgment when considering the litigation in its entirety, the superior court concluded that he was eligible for Rule 68 fees and directed him to recalculate his fee request. Carnahan immediately complied. The Windels eventually filed an untimely "Opposition to Carnahan's Claimed Attorney's Fees," arguing (1) that he was not entitled to attorney's fees under Rule 68; (2) that Rule 82 applied instead and resulted in a lower award; (3) that certain billing entries

should be disallowed as unrelated to the litigation; and (4) that Carnahan's claimed costs should also be reduced.

In November 2014 the superior court awarded fees pursuant to Rule 68 in the amount of $119,989.50, at the same time granting the Windels' two outstanding motions for extensions of time to oppose the award. The court did not address the issues raised in the Windels' opposition except to note that their "objections to other minor fees were expressly waived on appeal and by plaintiffs' failure timely to object prior to the court awarding fees to Carnahan in 2010."

## C.    Issues Presented In This Appeal

The Windels raise these issues on appeal: (1) When the litigation is properly analyzed, did Carnahan do better than his offer of judgment so as to be entitled to an award of attorney's fees under Rule 68? (2) Did the superior court err by failing to decide questions we noted but did not decide in *Windel I*: (a) whether Carnahan's offer of judgment was void to begin with because it was made to the Windels jointly and unapportioned, and (b) whether an offeror may tender an offer of judgment and then later assert additional claims that change the litigation such that it may be unfair to base an attorney's fees award on the original offer? Finally, (3) did the superior court err when it declined to exclude certain specific billing entries from its attorney's fees calculation?

## III.    STANDARDS OF REVIEW

"We exercise our independent judgment in reviewing the superior court's interpretation of Rule 68, as well as in calculating a judgment's value to determine

whether it exceeded an offer of judgment."[34]  A court's factual findings, including whether waiver occurred, are reviewed for clear error.[35]

## IV.   DISCUSSION

### A.   The Superior Court Did Not Err In Its Award Of Attorney's Fees To Carnahan Under Civil Rule 68.

The Windels contend that the superior court erred in its August 2014 award of Rule 68 attorney's fees by failing to properly follow our decision in *Windel I*.[36] Specifically, they argue that the superior court, in comparing the 2006 offer of judgment with the results of the litigation, erred by:  (1) failing to consider the cost of the 2007 culvert as a monetary payment by Carnahan to the Windels, to be set off against the $10,000 he offered to pay in the offer of judgment; (2) holding that the cost of the additional court-ordered remediation was only $4,000; and (3) failing to put a monetary value on the interference-with-access claim that Carnahan gave up in the partial

---

[34]    *Id.* at 277 (quoting *Dearlove v. Campbell*, 301 P.3d 1230, 1233 (Alaska 2013)).

[35]    *Luker v. Sykes*, 357 P.3d 1191, 1195 (Alaska 2015) ("[W]e review the superior court's factual findings for clear error . . . ." (citing *Price v. Eastham*, 75 P.3d 1051, 1055 (Alaska 2003))); *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 346 (Alaska 2014) ("A superior court's determination whether waiver occurred is a question of fact that we review for clear error." (quoting *Sengul v. CMS Franklin, Inc.*, 265 P.3d 320, 324 (Alaska 2011))).

[36]    The Windels do not challenge the superior court's decision on remand to consider the litigation as a whole rather than as two segments.  In *Windel I* we noted that the court's decision to bifurcate the litigation was "unexplained and appear[ed] contrary to our stated interpretation of Rule 68," but we did not go so far as to say that the superior court could not ultimately decide to follow the same approach on remand.  305 P.3d at 280.  Its decision not to, however, is certainly consistent with our direction in *Windel I*.

settlement. We conclude, however, that the superior court did not err in its Rule 68 analysis.

### 1. The superior court properly considered the 2007 culvert.

We assumed in *Windel I* that Carnahan had constructed the 2007 culvert.[37] Based on that assumption, we noted that in the past we have "rejected the argument that voluntary payments and partial settlements must be ignored when comparing a final judgment to a previous offer of judgment"; we therefore held that the cost of constructing the 2007 culvert should factor into the superior court's analysis on remand as an offset to Carnahan's offer of judgment.[38] The Windels argue that the superior court on remand failed to take the 2007 remediation into account, but the record shows otherwise. The court found as a factual matter that Carnahan did not build the 2007 culvert and therefore the construction "was not a voluntary remediation effort attributable to [Carnahan]."[39] The superior court's finding that Carnahan did not after all construct the 2007 culvert finds support in the evidence and is not clearly erroneous.[40]

---

[37]     *Id.* at 269, 278, 280, 281.

[38]     *Id.* at 280 (first citing *Dearlove*, 301 P.3d at 1234-35; then citing *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1088-90 (Alaska 2008)).

[39]     According to the superior court, its "review of the two-day trial held on the equitable nuisance abatement claim along with the parties' filings shows that some unidentified third party installed the [2007] culvert."

[40]     The parties do not agree on who built the culvert, and neither seems to know. The Windels claim that "[t]he Condo Association obtained a culvert and assisted Kev[e]n Windel in placing the culvert in the ground" while "acting for Carnahan." Carnahan, on the other hand, contends that "[n]either [the] Windels nor Carnahan played any role in the installation" of the culvert and that "[t]he work was personally performed, and the costs of the culvert [were] incurred and absorbed, by an individual resident of the

(continued...)

The Windels argue that it does not matter who built the culvert because "Carnahan caused the problem and *should have paid* for the 2007 culvert — it had a cost." (Emphasis added.) But while voluntary payments[41] are not to be omitted in a Rule 68 comparison,[42] the Windels point to no authority for the proposition that voluntary remediation efforts undertaken by someone else — such as, in this case, an unknown third party — should count against the offeror. Relatedly, the Windels contend that if the cost of the 2007 culvert is not counted against Carnahan, it should be counted as a benefit to them, factored into the comparison in their favor. But they provide no legal support for this proposition either.

Penalizing an offeror and rewarding an offeree for payments made by a third party could discourage settlements, undercutting the purpose of Rule 68.[43] A would-be offeror could be dissuaded from making an offer of judgment if the offeror's chance of beating the offer were subject to the unpredictable acts of third parties who, intentionally or otherwise, provide benefit to the offeree. We conclude that the superior

---

[40](...continued)
neighborhood."

[41]     In *Windel I*, "we express[ed] no opinion on the superior court's use of Carnahan's remediation costs as a functional equivalent to a benefit or damages awardable to the Windels" because the issue was not before us. 305 P.3d at 280 n.45. Once again the issue is not squarely presented, and again we express no opinion on it.

[42]     *Dearlove*, 301 P.3d at 1235 ("Rule 68 is not intended to benefit an offeror who unilaterally satisfies a portion of the other party's claim in a way that is not reflected in the final verdict." (citing *Mackie v. Chizmar*, 965 P.2d 1202, 1205 (Alaska 1998))).

[43]     *See Progressive Corp.*, 195 P.3d at 1088 ("The goal of Rule 68 is to encourage settlement and avoid litigation." (citing *Fernandes v. Portwine*, 56 P.3d 1, 9 (Alaska 2002))).

court did not err when it refused to count the estimated cost of the 2007 culvert as a payment by Carnahan to the Windels for purposes of its Rule 68 analysis.

> **2.    The superior court properly took account of the additional court-ordered remediation.**

The Windels next argue that the superior court erred in its Rule 68 analysis when it found that Carnahan "paid approximately $4,000 for the additional remediation efforts ordered by [the superior] court:  the building of an additional culvert, and the construction of swales or t-ditches for both of the culverts."  The Windels argue that because the additional court-ordered remediation had not been completed as of the filing of this appeal, we should remand the issue again so the superior court can determine the actual cost of the additional remediation once it is completed — and only then decide whether the 2006 offer of judgment has been bettered and which party prevailed.[44]  We decline to do so.

In January 2010, following the evidentiary hearing on the nuisance abatement issue, the superior court ordered Carnahan to install an additional culvert and swales or t-ditches by August of that year.  But in later email correspondence through their attorney, the Windels made clear that they wanted Carnahan to delay work on the remediation while they appealed the underlying issue of the easement's validity.  The parties agreed to put off the work pending the outcome of *Windel I*.[45]  And as Carnahan notes, our decision in *Windel I* came after the 2013 construction season, so the next opportunity for installation of the second culvert and t-ditches was in 2014.  Carnahan

---

[44]    The Windels twice asked us to stay this appeal pending performance of the additional remediation and determination of its actual cost.  We denied their requests.

[45]    In their opening brief in *Windel I*, the Windels conceded that the additional remediation had not yet taken place "[b]y agreement between the parties."  Carnahan's brief on this appeal reflects the same understanding.

got a new bid that year in the amount of $4,100 — an increase of just $100 from the 2010 estimate.

According to the Windels, the cost today would be significantly higher, because new engineering studies are required and the local government has imposed new requirements on the construction. The Windels assert that "Carnahan could have avoided a[n]y consequences of delay by performing the required remediation immediately" and argue that the superior court should determine the actual cost after the remediation is completed and only then determine whether Carnahan has bettered his offer of judgment.

Carnahan counters that the eventual cost of the additional remediation is irrelevant and that the court was correct to use the unrebutted estimate he submitted in 2010, when he first moved for attorney's fees. He argues that "[d]etermining whether [he] 'beat' his offer of judgment requires a determination of what the remediation cost [was] *at the time of the final judgment*, i.e., during the 2010 construction season." (Emphasis in original.) He maintains that the fact that the additional remediation had not been completed by the time final judgment was entered "does not alter the analysis of whether Carnahan had beaten his offer of judgment at the end of the litigation."

Carnahan's analysis is persuasive. An attorney's fees award at the end of a case should not be put on indefinite hold until the parties have accomplished whatever it is that the superior court has ordered them to do. The Alaska Civil Rules contemplate that issues of attorney's fees and costs will be submitted to the trial court within ten days of final judgment.[46] The Windels' suggested procedure could inordinately delay the

---

[46] *See* Alaska R. Civ. P. 79(b) (providing that "the prevailing party must file and serve an itemized and verified cost bill . . . within 10 days after the date shown in the (continued...)

resolution of disputes, require parties and judges to revisit long-dormant case files, and encourage bad-faith delays. Here, the superior court accepted the $4,000 estimate Carnahan submitted at the conclusion of litigation at the trial court level, an estimate the Windels did not oppose. There is no evidence in the record to suggest the estimate was not a reasonable one at the time. The superior court did not err when it relied on it for purposes of the Rule 68 comparison.

### 3. The superior court did not err by failing to take into consideration the claims the Windels and Carnahan gave up in the partial settlement agreement.

The Windels' third claim of error in the superior court's decision to apply Rule 68 deals with the claims for damages that each side gave up as part of the 2009 partial settlement agreement. The Windels contend that their trespass claims against Carnahan, which they gave up, were worth nothing since the superior court had already decided on summary judgment that Carnahan's claimed easement was valid; he therefore gained no benefit from the claims' dismissal. On the other hand, they contend that Carnahan's claim against them for interference with his access, which he also gave up in the settlement, was worth the full $20,000 he claimed as damages in his amended answer, and when he agreed to dismiss that claim the Windels reaped a benefit in that monetary amount. Thus, they argue, what they gained in the litigation was significantly

<hr>

[46](...continued)
clerk's certificate of distribution on the judgment" and that the "[f]ailure of a party to file and serve a cost bill within 10 days, or such additional time as the court may allow, will be construed as a waiver of the party's right to recover costs"); Alaska R. Civ. P. 82(c) (providing that a motion for attorney's fees "must be filed within 10 days after the date shown in the clerk's certificate of distribution on the judgment" and that "[f]ailure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to recover attorney's fees").

greater than the $10,000 Carnahan offered to pay them as part of his offer of judgment.

The logic of this argument is too attenuated for us to accept. It assumes not only that Carnahan's counterclaim had merit but also that it had at least the monetary value Carnahan assigned to it in his amended answer. But on this appeal, as in the superior court, the Windels do not explain why the claim should be given the value Carnahan alleged it had. And because Carnahan agreed to drop the claim, neither its merit nor its value was ever determined. The superior court did not err by rejecting this argument.

**4.     We affirm the superior court's Rule 68 attorney's fees award.**

Because we reject the Windels' various challenges to the superior court's analysis of Rule 68 attorney's fees on remand, we affirm the award. The superior court followed our decision in *Windel I*, appropriately considered the entire litigation for purposes of its analysis, and did not err in concluding that Carnahan remained the prevailing party.

**B.     The Windels Have Waived The Argument That The Offer Of Judgment Was Invalid Because It Was Made Jointly And Unapportioned.**

The Windels argue that the superior court erred by failing to address the validity of Carnahan's offer of judgment, an issue we touched on in a footnote in *Windel I*. We expressly left it to the superior court to address in the first instance whether "Carnahan's offer of judgment is void because it was made to [Keven and Marlene Windel] jointly and un-apportioned" — should the issue be raised on remand.[47]

The Windels barely raised this argument on remand and now have briefed it inadequately on appeal; like the superior court, we therefore decline to address it. As

---

[47]     *Windel I*, 305 P.3d 264, 279 n.39 (Alaska 2013).

they did in the superior court, the Windels argue on appeal that the court is "require[d] . . . to address the issue of whether or not an offer made by a single offeror to multiple offerees is void," cite a single case without explanation,[48] and conclude that the issue "should be resolved in favor of the Windels by voiding the offer of judgment." We have held that "[i]ssues not properly raised or briefed at trial are not properly before this court on appeal"[49] and that "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[50] Although the Windels include a slightly more substantial argument on the issue in their reply brief, waiver due to inadequate briefing "is not correctable by arguing the issue in a reply

---

[48] The case the Windels cite, *Brinkerhoff v. Swearingen Aviation Corp.*, concluded that "[a]lthough problems of apportionment may not always be present, such difficulties are prevalent enough to warrant a general exclusion of joint offers from the penal cost provisions of Rule 68." 663 P.2d 937, 943 (Alaska 1983). But our subsequent case law explained that "[i]n determining whether a joint offer may nonetheless be valid, we consider two factors: (1) whether '[t]he settlement offer clearly indicated all claims between the parties would be resolved if the offer were accepted'; and (2) whether apportionment difficulty actually exists." *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 99 (Alaska 2015) (quoting *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1042 & n.85 (Alaska 2002)). The Windels do not address these factors, despite their potential relevance to a case involving property-related claims by tenants in the entirety.

[49] *Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011) (alteration in original) (quoting *Hagans, Brown & Gibbs v. First Nat'l Bank of Anchorage*, 783 P.2d 1164, 1166 (Alaska 1989)).

[50] *Id.* (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991)).

brief."[51] We therefore conclude that the validity of Carnahan's offer of judgment is not properly before us for decision.

### C.     The Windels' Argument That The Offer of Judgment Was Voided By The Later Settlement Is Barred By The Law Of The Case Doctrine.

The Windels also challenge the superior court's failure to address another issue we mentioned in a footnote in *Windel I*. Because the issue was not before us in that appeal, we expressed no opinion about "whether an offeror may tender an offer of judgment and then later assert additional claims that materially change the litigation so that it might be unfair to enforce the original offer of judgment."[52] The issue is still not before us, and therefore we again express no opinion on it.

The argument the Windels make that purports to address this footnoted issue actually addresses something different: where the litigation is changed not by the assertion of new claims but by partial settlement of the original claims. And this argument is virtually identical to one the Windels made in their reply brief in *Windel I*. We addressed the issue at length in *Windel I*, ultimately concluding that "the parties' partial settlement agreement did not preclude Carnahan's motion for attorney's fees under either Rule 68 or Rule 82."[53]

The law of the case doctrine, which is " 'akin to the doctrine of res judicata,' generally 'prohibits the reconsideration of issues which have been adjudicated

---

[51]     *Adamson*, 819 P.2d at 889 n.3 (citing *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n.4 (Alaska 1982)).

[52]     *Windel I*, 305 P.3d at 280 n.42.

[53]     *Id.* at 279.

in a previous appeal in the same case.' "[54] Because we rejected in *Windel I* the argument that the partial settlement agreement rendered the offer of judgment void, we do not consider it again here.

D. **The Windels Waived Their Challenges To Specific Billing Entries.**

Finally, the Windels assert that Carnahan should not have been awarded attorney's fees for certain services performed between 2005 and 2010 because they were unrelated to this litigation. The first time the Windels raised these objections was in October 2014, when they filed their response to the superior court's order on remand and Carnahan's recalculated fees request. When the court made its award in November 2014, it noted in a handwritten addendum that "[p]laintiffs' objections to other minor fees were expressly waived on appeal and by plaintiffs' failure timely to object prior to the court awarding fees to Carnahan in 2010."

Carnahan first submitted the relevant billing records in support of his 2010 fees request; the Windels raised no objection at that time. The superior court evaluated the parties' submissions and in September 2010 awarded Carnahan $49,902.60 in Rule 82 attorney's fees. The Windels did not raise any objections to specific time entries in their first appeal; in fact, we explicitly noted in *Windel I* that the Windels were "not contesting the amount of attorney's fees awarded and therefore no factual issues remain[ed] to be decided."[55] Because the Windels had a full opportunity to litigate objections to specific billing entries at the time of the 2010 fees award but failed to do so, we see no clear error in the superior court's determination that those objections are waived.

---

[54] *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009) (quoting *State Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 n.52 (Alaska 2003)).

[55] *Windel I*, 305 P.3d at 277.

## V. CONCLUSION

The superior court's award of attorney's fees pursuant to Alaska Civil Rule 68 is AFFIRMED.